**In re Thomas M. EDGERTON, Debtor.**

**Thomas M. EDGERTON, individually and as Trustee U/T/A dated March 20, 1985, Plaintiff,**

**v.**

**SHEARSON LEHMAN BROTHERS, INC., and Stephen A. Wenc, Defendants.**

**Bankruptcy Nos. 88 B 8492, 88 A 0436.**

United States Bankruptcy Court, N.D. Illinois, E.D.

March 27, 1989.

Thomas M. Knepper, Joel M. Hurwitz, Robert Radasevich, Therese M. Obringer, Neal Gerber Eisenberg & Lurie, Chicago, Ill., for Shearson Lehman Bros., Inc. (movant).

John Troelstrup, David Sugar, Gini S. Marziani, Roy L. Bernstein, Gottlieb & Schwartz, Chicago, Ill., for debtor.

## ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY AND STAYING THE ADVERSARY PENDING ARBITRATION

SUSAN PIERSON DeWITT, Bankruptcy Judge.

This matter comes before the Court on the Motion of Shearson Lehman Brothers, Inc. ("Shearson") for Relief from the Automatic Stay, the Memorandum in Support of the Motion for Relief From the Automatic Stay, the Motion of Shearson to Stay the Adversary Proceeding Pending Arbitration,

the Memorandum in Support of the Motion to Stay the Adversary, the Memorandum of Law in Opposition to Shearson Lehman Brothers, Inc.'s Motion for Relief from the Automatic Stay and Motion for a Stay of the Adversary Proceeding Pending Arbitration, and the Reply Memorandum in Support of the Motion for Relief from the Automatic Stay and the Motion to Stay the Adversary Proceeding. Now, therefore, for the reasons set forth below, Shearson's Motion for Relief from the Automatic Stay and Shearson's Motion to Stay the Adversary Proceeding Pending Arbitration are granted.

### Statement of Facts

Prior to the time the Debtor, Thomas Edgerton ("Edgerton") filed his Petition for Relief under Chapter 11 of the Bankruptcy Code, he was a retired senior citizen engaged in options trading and speculating. Shearson managed Edgerton's retail brokerage account. Pursuant to the Customer Agreement ("Agreement") entered into by Edgerton and Shearson, if a dispute arose between the parties, the dispute was to be settled by arbitration in accordance with the rules of the National Association of Securities Dealers ("NASD") or the Board of Directors of the New York Stock Exchange Inc., and/or the American Stock Exchange. Paragraph 13 of the Agreement provides:

> This agreement shall inure to the benefit of your successors and assigns ... Unless unenforceable due to federal or state law, any controversy arising out of or relating to my accounts, to transactions with you for me or to this agreement or the breach thereof, shall be settled by arbitration in accordance with the rules then in effect, of the National Association of Securities Dealers, Inc. or the Boards of Directors of the New York Stock Exchange, Inc. as I may elect. If I do not make such election, then you may make such election. Judgment upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof ...

Edgerton was a customer of Shearson's for over twenty years.

On October 12, 1987, Shearson mailed Edgerton a margin call. After the market closed on October 16, 1987, Edgerton received the margin call in the mail. Between October 12, 1987 and October 16, 1987, Edgerton talked to Stephen Wenc ("Wenc"), his Shearson broker, regarding his account. However, Wenc never mentioned that Edgerton was subject to a margin call. On October 19, 1987, Shearson liquidated Edgerton's account resulting in a deficit of $346,695.70.

In March 1988, Shearson initiated arbitration before the NASD to recover the deficiency. As a result of Shearson's claim, Edgerton filed for relief on May 31, 1988, and subsequently filed an adversary proceeding against Shearson alleging that in October 1987 Shearson mismanaged his account.

Edgerton's most valuable asset is his unliquidated claim against Shearson in the amount of $900,000. Additionally, Edgerton's largest unsecured debt is the alleged claim of Shearson in the amount of $333,035.78.

Shearson wants the Court to modify the automatic stay so that it can proceed with arbitration before the NASD. Additionally, Shearson wants the Court to stay the adversary proceeding pending the resolution of the arbitration, and Shearson wants the Court to order Edgerton to file in arbitration any counterclaims he may have against Shearson. Edgerton alleges that there is no cause to lift the automatic stay and that the bankruptcy court is the proper forum to resolve the pending dispute.

### DISCUSSION

Section 362 of the Bankruptcy Code provides in pertinent part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
> (1) for cause ...

11 U.S.C. § 362 (1982 and Supp.1986). Thus, before the Court can modify the

stay, Shearson must demonstrate that cause exists for the modification of the automatic stay. Shearson alleges that cause exists because the arbitration clause in the Agreement makes the NASD the proper forum to resolve the pending dispute. Furthermore, Shearson argues that under the federal Arbitration Act, arbitration is mandatory, and, in the alternative, Shearson argues that even if arbitration is not mandatory, the Court has the power to allow arbitration to go forward and should exercise that power. Edgerton, however, alleges that even though the Court has the power to allow arbitration to go forward, it should exercise its discretion and maintain jurisdiction over the dispute.

The parties do not contest the fact that the Agreement is governed by the federal Arbitration Act. 9 U.S.C. §§ 1–208 (1982). Section 3 of the Arbitration Act provides in pertinent part:

> If any suit or proceeding be brought in *any* of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, *shall* on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, provided the applicant for the stay is not in default in proceeding with such application.

9 U.S.C. § 3 (1982) (emphasis added). An exception to mandatory arbitration may exist, however, when the policy behind the Arbitration Act is in direct conflict with another federal statute. The party opposing arbitration carries the burden of establishing that Congress "intended to preclude a waiver of judicial remedies for the statutory rights at issue." *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987).

> Just as it is the congressional policy manifested in the federal Arbitration Act that requires courts liberally to construe the scope of arbitration agreements covered by that Act, it is the congressional intention expressed in some other statute on which the courts must rely to identify any category of claim as to which agreements to arbitrate will be held unenforceable.

*Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 627, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985).

Currently, the United States Supreme Court is uniformly enforcing arbitration agreements in various commercial contexts. *See Shearson/American Express, Inc.,* 482 U.S. at 220, 107 S.Ct. at 2332; *Mitsubishi Motors Corp.,* 473 U.S. at 614, 105 S.Ct. at 3346; *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985); *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). However, several lower courts have recognized that there is an apparent conflict between mandatory arbitration under the Arbitration Act and the protection of the automatic stay. *See Zimmerman v. Continental Airlines, Inc.,* 712 F.2d 55 (3rd Cir.1983) *cert. denied* 464 U.S. 1038, 104 S.Ct. 699, 79 L.Ed.2d 165 (1984); *In re Guy C. Long, Inc.,* 90 B.R. 99 (E.D.Pa. 1988); *Societe Nationale Algerienne v. Distrigas Corp.,* 80 B.R. 606 (D.Mass. 1987); *Double TRL, Inc. v. F.S. Leasing, Inc.,* 65 B.R. 993 (Bankr.E.D.N.Y.1986); *In re Allen & Hein, Inc.,* 59 B.R. 733 (Bankr. S.D.Cal.1986); *In re Morgan,* 28 B.R. 3 (Bankr. 1st Cir.1983). The *Zimmerman* case is the leading case which supports the proposition that mandatory arbitration under the Arbitration Act is "impliedly modified" by the Bankruptcy Reform Act of 1978. More specifically, the Third Circuit held:

> Bankruptcy proceedings, however, have long held the special place in the federal judicial system ... While the sanctity of arbitration is of fundamental federal concern, it cannot be said to occupy a position of similar importance. Therefore, because of the importance of bankruptcy proceedings in general, and the need for the expeditious resolution in bankruptcy matters in particular, we hold that the

intentions of Congress will be better realized if the Bankruptcy Reform Act is read to impliedly modify the Arbitration Act.

*Zimmerman,* 712 F.2d at 59. Thus, the court concluded that although a bankruptcy court has the power to stay proceedings pending arbitration, the Court should use its sound discretion in exercising it. However, in this case, the Court need not decide the issue because even if there is the discretion suggested in the *Zimmerman* case, this Court will modify the automatic stay and allow arbitration to go forward. Accordingly, the Court will stay the adversary proceeding pending arbitration.

The Court's determination that the stay should be modified to allow arbitration to go forward and to stay the adversary proceeding pending arbitration is based upon a balance of the competing interests. *See Distrigas,* 80 B.R. at 610. A bankruptcy court should consider the following factors in determining whether to modify the automatic stay to allow arbitration:

1. the degree to which the nature and extent of the litigation and evidence makes the judicial forum preferable to arbitration;

2. the extent to which special expertise as necessary to resolve the disputes; and

3. the identity of the persons comprising the arbitration committee and their track record in resolving disputes between the parties.

*Double TRL, Inc.,* 65 B.R. at 998 (Bankr.E. D.N.Y.1986); *In re R.M. Cordova International, Inc.,* 77 B.R. 441 (Bankr.D.N.J. 1987); *In re Allen & Hein,* 59 B.R. 733 (Bankr.S.D.Cal.1986).

First, in this case Shearson alleges that Edgerton owes it $333,035.78 as a result of the margin call made during the October 19, 1987 stock crash. On the other hand, Edgerton alleges that Shearson owes him approximately $900,000.00 in damages for mismanaging his account during the October 19, 1987 stock crash. Both claims involve several transactions in trading Edgerton's account. The majority of the evidence will include account opening documentation, trading summaries, confirmations and any written communications between the parties. Accordingly, the Court finds that a limited number of witnesses will be necessary and that extensive discovery will not be necessary.

Second, the issues set forth in the parties' claims involve sophisticated and complex trading practices. Edgerton has, furthermore, alleged that Shearson violated several New York Stock Exchange and NASD Rules and Regulations. Thus, the Court finds that because of the complexity of the securities transactions, the NASD, because of its special expertise, is better able to effectively and expeditiously resolve this matter.

Third, the NASD, a panel consisting of members of the industry and the panel chosen by the parties, has arbitrated numerous disputes and is more than competent to resolve the matters now pending before this Court. Furthermore, the Court finds that Edgerton's argument that he did not freely negotiate the arbitration clause is without merit.

Additionally, this case has been pending for approximately one year. The Debtor has yet to file a Plan or Disclosure Statement because of the uncertainty of the unliquidated claims of both parties. Thus, there is no evidence that arbitration would lessen Edgerton's ability to formulate a Plan. In fact, the resolution of the arbitration will allow Edgerton to formulate a Plan. Accordingly, the Court will modify the automatic stay to allow Shearson to arbitrate its claims and it will stay the adversary proceeding pending arbitration. Additionally, the Court will order Edgerton to file in arbitration any counterclaims he may have against Shearson.

IT IS HEREBY ORDERED THAT the Motion of Shearson Lehman Brothers, Inc. to Modify the Automatic Stay is hereby granted, and the Motion of Shearson Lehman Brothers, Inc. to Stay the Adversary Proceeding Pending Arbitration is also granted. IT IS HEREBY FURTHER ORDERED THAT the Debtor, Thomas Edgerton, shall file in arbitration any counterclaims he may have against Shearson Lehman Brothers, Inc.