111 B.R. 999 (1990)
In re BICOASTAL CORPORATION, f/k/a The Singer Company, Debtor.
Bankruptcy No. 89-8191-8P1.
United States Bankruptcy Court, M.D. Florida, Tampa Division.
March 21, 1990.
David Redmond, Harley E. Riedel, Tampa, Fla., Oppenheimer, Wolff & Donnelly, St. Paul, Minn., for debtor.
Douglas P. McClurg, Tampa, Fla., Shearman & Sterling, New York City, for movant.
*1000 William Goldman, Brown & Wood, New York City, Francis H. Cobb, Tampa, Fla., for creditor's committee.
Lynne L. England, Tampa, Fla., Asst. U.S. Trustee.

ORDER ON CAE INDUSTRIES, LTD.'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY
ALEXANDER L. PASKAY, Chief Judge.
THIS CAUSE came on for hearing with notice to all parties in interest upon a Motion for Relief from Stay filed by CAE Industries, Ltd., in the above-styled Chapter 11 case.
CAE Industries, Ltd. (CAE), a Canadian Corporation, seeks limited relief from the stay to enforce the contractual arbitration provisions of a Stock Purchase Agreement (the Agreement) entered into between CAE and Aerospace Holdings Company (Aerospace), a wholly owned subsidiary of the Bicoastal Corporation, f/k/a The Singer Company (Debtor).
The Court having heard argument of counsel and considered the pertinent part of the record and facts which are undisputed, now finds and concludes as follows:
The controlling facts underlying the dispute between CAE and the Debtor arose from a Stock Purchase Agreement dated July 8, 1988, entered into between CAE and Aerospace, a wholly owned subsidiary of the Debtor. (CAE's Motion for Relief from the Automatic Stay, Exh. A). Pursuant to the terms of the Stock Purchase Agreement, CAE purchased all of the outstanding stock of Link-Flight Simulation Corporation, Link Tactical Military Simulation Corporation, Allen Holdings Corporation and Link Training Service Corporation (collectively the "Link Companies") from Aerospace. On July 7, 1988, the Debtor guaranteed in writing Aerospace's performance and its liabilities which may arise from the Stock Purchase Agreement.
On August 22, 1988, CAE and Aerospace closed the Stock Purchase Agreement, and CAE paid at closing to Aerospace $560 million subject to the terms of the post-closing purchase price adjustment set out in § 1.03 of the Stock Purchase Agreement (the "Purchase Price Adjustment"). All business records of the Link Companies came immediately under CAE's control; the employees of the Link Companies continued to be employed by CAE's new subsidiaries. Under the purchase price adjustment provision of the Agreement (§ 1.03(b)(i)), Aerospace had 45 days to provide CAE with an audited, combined consolidated balance sheet of the Link Companies at closing. According to a provision of the Agreement, the Closing Date Balance Sheet had to be prepared in accordance with generally accepting accounting principles and audited by Peat Marwick Main & Co. (PM & M). The parties agreed that the amounts reflected on the Debtor's April 30, 1988, balance sheet would be deemed "conclusive" for purposes of the closing date balance sheet subject only to changes needed to reflect transactions occurring from May 1, 1988, up to and including the closing date. An update was also required to conform to the generally accepted accounting principles. (Purchase Agreement § 1.03(b)(i)).
Under the Agreement, CAE had 20 days to present in writing specific objections after receiving delivery of the Closing Date Balance Sheet. The Agreement further provided that if CAE raised objections to the Closing Date Balance Sheet, the parties agreed to try to resolve the dispute informally (§ 1.03(b)(iii)) and, in the event the parties were unable to resolve CAE's objections informally, the dispute would be submitted to an independent accounting firm. (Purchase Agreement § 1.03(b)(iv)).
The Agreement to refer disputed "matters" to an independent accounting firm relates only to adjustments to the update of the April 30, 1988, closing date balance sheet. All matters involving claims of fraud or the validity of the balance sheet itself were not controlled by the provision dealing with arbitration and the provision dealing with the reference of the issue raised by the objection.
For various reasons that are largely unrelated to the present motion, PM & M was *1001 unable to issue its Closing Date Balance Sheet until January 13, 1989. Based on the PM & M Closing Date Balance Sheet, the adjustment to the purchase price called for by the Stock Purchase Agreement was in excess of $11 million in favor of Aerospace. On March 10, 1989, CAE sent its objection to the Closing Date Balance Sheet to the Debtor and Aerospace. The objections raised by CAE, if valid, would require a purchase price adjustment downward in favor of CAE in excess of $50 million.
Prior to the commencement of this case, CAE instituted a civil suit in the Southern District of New York styled CAE Industries, Ltd., CAE-Link Corporation and Allen Holdings Corporation v. Aerospace Holdings Company, The Singer Company, and Paul A. Bilzerian, No. 89-CIV-29845, 1989 WL 135384, S.D.N.Y.1989 (the "New York Action"), and sought a judgment compelling the Debtor to submit to arbitration of the purchase price adjustment dispute between the parties which arose as a result of the Agreement entered into between CAE and Aerospace. The subject of the arbitration is a post-closing purchase price adjustment (the "Purchase Price Adjustment") associated with the Agreement. (CAE's Motion for Relief from the Automatic Stay, Exh. A, at Section 1.03(b)(iv)).
On November 1 and November 6, 1989, the District Court in the New York action ordered the Debtor and Aerospace to proceed to arbitration to resolve price adjustment disputes. Despite being so ordered, the Debtor failed and refused to submit to arbitration. The Debtor filed its Petition for Relief on November 10, 1989. As the result, automatic stay imposed by § 362 of the Bankruptcy Code stopped any further steps in the New York action.
It is the contention of CAE that it is entitled to relief from the automatic stay for "cause" in order to be permitted to proceed with arbitration to resolve the disputes related to the Purchase Price Adjustment and to liquidate CAE's Purchase Price Adjustment Claim for the following reasons:
First, allowing arbitration of the Purchase Price Adjustment will have, if any, only a minimal negative impact on the administration of the Debtor's bankruptcy estate, and will carry out the parties' Agreement, including their Agreement to submit to arbitration as the maker specified in § 1.03(b)(iv) of the Stock Purchase Agreement.
Second, the procedure of accounting is specifically tailored to arbitration; is a well-suited method for resolution of the Purchase Price Adjustment in that arbitration will utilize specialized expertise of accountants; and will in all respects be more efficient and appropriate than resolving this claim through litigation in the bankruptcy court.
Third, there is a strong federal policy favoring the enforcement of arbitration clauses in general, and international arbitration clauses in particular, all of which militates in favor of allowing the Purchase Price Adjustment to be arbitrated as originally agreed by the parties. The reference to international arbitration is based on the fact that CAE is a Canadian corporation.
Fourth, arbitrating the purchase price adjustment is in the best interests of the Debtor's estate in that one of CAE's claims can be promptly, efficiently determined, which in turn would assist the reorganization process.
Fifth, the Debtor has already been ordered to arbitrate in the New York action by the United States District Court which found that the Debtor took a "wholly frivolous" position in attempting to avoid arbitration that should have commenced more than one year ago.
In opposition to the Motion, the Debtor contends:
First, CAE presented no legitimate cause for granting relief from stay.
Second, the Motion of CAE is designed to afford CAE a special procedure or remedy not available to other creditors of the estate and would hinder and delay the orderly reorganization process, and the rehabilitation of the Debtor.
*1002 Third, the claim of CAE against the Debtor is nothing more than a general unsecured claim, albeit so far unliquidated, and if one is filed, the Debtor will have an opportunity in the bankruptcy forum to speedily resolve any objection which the Debtor may file to the allowance of a claim of CAE.
Fourth, to compel the Debtor to submit to arbitration would cause an unnecessary delay and additional expense to the Debtor's estate and is not warranted under the circumstances.
Fifth, the Debtor contends that while the overall policy generally favors arbitration over litigation, this principle is not applicable if a party to the arbitration is a debtor involved in a reorganization process under Chapter 11 of the Bankruptcy Code, citing, Zimmerman v. Continental Airlines, Inc., 712 F.2d 55 (3d Cir.1983), cert. denied, 464 U.S. 1038, 104 S.Ct. 699, 79 L.Ed.2d 165 (1984). The court in Zimmerman found that the Bankruptcy Reform Act of 1978, Pub.L. No. 95-598, 92 Stat. 2549, Codified at 11 U.S.C.A. § 101-1330, Pub.L. No. 80-282, 61 Stat. 669, Codified at 9 U.S.C.A. § 1-14, "impliedly modified" the Federal Arbitration Act (the "FAA") and gave the bankruptcy court discretion to hear and determine matters otherwise subject to arbitration under the FAA. The court found that bankruptcy proceedings have a "special place" in the federal judicial system and that "[w]hile the sanctity of arbitration is of fundamental federal concern, it cannot be said to occupy a position of similar importance." 712 F.2d at 59. Similarly, the court in In re Braniff Airways, Inc., 33 B.R. 33 (Bankr.N.D.Tex.1983) noted that the legislative history of § 362 specifically mentions that arbitration proceedings are stayed by a Chapter 11 filing.
Sixth, that the allowance or disallowance of a claim filed in a Chapter 11 case is the pure "core" proceeding by virtue of 28 U.S.C. § 157(b)(2)(B) and core bankruptcy proceedings should not be deferred to arbitration, but should be considered by the bankruptcy court where the Chapter 11 case is pending.
Seventh, the Debtor contends that CAE failed to show any exceptional circumstances which would warrant to grant the relief it seeks.
Having considered the respective contentions of the parties, this Court is satisfied that the Motion filed by CAE is well taken and should be granted, and the stay should be lifted for cause for the limited purpose to submit the contract price adjustment dispute to arbitration. This conclusion is based on the following:
First, it is without dispute that it was clearly the intention of the parties that in the event a dispute arose concerning the price adjustment provision of the Agreement, the dispute would be submitted to arbitration. Second, the determination of this issue calls for special expertise; it would not require any discovery or witnesses, but merely a resolution of the issue by an independent certified public accountant firm. Without considering any peripheral issues which might be lurking in the background, this Court is satisfied that the sole question which the arbitrator would be called upon to determine is whether or not the Closing Date Balance Sheet submitted by the Debtor was prepared in full compliance with generally accepted accounting principles. The process could be accomplished easily without any delay and at much less expense than a full-scale litigation which would involve an objection to the claim of CAE filed in this Court. Considering the same problem, the bankruptcy court in In re Edgerton, 98 B.R. 392 (Bankr.N.D.Ill.1989), after balancing the competing interests, concluded that Shearson was entitled to relief from the stay in order to arbitrate before the NASD its claim against the Debtor arising from a deficit in the Debtor's margined securities account. In determining that the stay should be lifted, the Edgerton court applied the following factors:
(i) the degree to which the nature and extent of litigation and evidence makes the judicial forum preferable to arbitration;
(ii) the extent to which special expertise is necessary to resolve the dispute; and
*1003 (iii) the identity of the persons comprising the arbitration panel and their track record in resolving disputes. Edgerton, at 395; citing, Double TRL, Inc., 65 B.R. 993 (Bankr.E.D.N.Y.1986); In re R.M. Cordova Int'l, Inc., 77 B.R. 441 (Bankr.D.N.J.1987); and In re Allen & Hein, 59 B.R. 733 (Bankr.S.D.Cal.1986).
Applying these factors, the Edgerton court found that:
(i) a limited number of witnesses would be required and extensive discovery would not be necessary;
(ii) the issues raised involved sophisticated and complex securities trading practices about which the NASD had specialized expertise; and
(iii) the NASD had previously resolved numerous similar disputes. Additionally, the Court noted that the decision of the arbitrators would allow the Debtor to formulate a plan.
In the instant case the same is true. The issues underlying the dispute surrounding the Purchase Price Adjustment involve fine points of defense contract accounting, a sophisticated, complex and esoteric field. The evidence required to resolve the Purchase Price Adjustment will only involve documents created by accountants, and will not require any live testimony. No discovery is needed. An accounting arbitrator with experience in defense contract accounting is certainly a preferable position to consider and resolve a dispute relating to the issue specified in the Agreement.
In addition, it is clear that the claim of CAE is an unliquidated claim which must be liquidated in some forum before it could be allowed for the purpose of distribution by virtue of § 502(c) of the Bankruptcy Code. Allowing the parties to arbitrate this claim will prevent this Court from having to consider the complex and esoteric issues raised and will be judicially and financially economical. Arbitration will not negatively impact the Debtor's reorganization efforts, but will in fact enhance it by efficiently and rapidly determining CAE's Purchase Price Adjustment Claim, which, without doubt, is a prerequisite to reorganization.
Based on the foregoing, this Court is satisfied that there is sufficient "cause" to grant the relief and permit CAE to proceed with the arbitration called for by the Agreement. It should be noted, however, that the stay is modified only to a limited extent and shall not be construed to permit CAE to take any enforcement steps of its claim outside of the bankruptcy without further permission from this Court and that the arbitration shall be limited strictly to the narrow issue of whether or not the update of the Closing Date Balance Sheet submitted by the Debtor was or was not prepared under the generally accepted accounting principles.
Accordingly, it is
ORDERED, ADJUDGED AND DECREED that the Motion for Relief from the Automatic Stay filed by CAE Industries, Inc., be, and the same is hereby, granted in order to enable CAE to proceed with arbitration pursuant to Clause § 1.03(b)(iv) of the Purchase Price Adjustment Agreement.
DONE AND ORDERED.