**In re CHORUS DATA SYSTEMS, INC., Debtor.**

**Bankruptcy No. 90–10614.**

United States Bankruptcy Court,
D. New Hampshire.

Dec. 14, 1990.

Michael J. Scott, Michels & Michels, Londonderry, N.H., for Chorus Data Systems, Inc.

David Sears, Law Offices of Daniel W. Sklar, P.C., Manchester, N.H., for BankEast.

Connie Rakowsky, Orr and Reno, Concord, N.H., Larry M. Wolfson, Jenner & Block, Chicago, Ill., for Mitsubishi Electronics America, Inc.

Geraldine Brotherton, Boston, Mass., U.S. Trustee.

## MEMORANDUM OPINION

JAMES E. YACOS, Bankruptcy Judge.

This opinion concerns whether to grant the creditor Mitsubishi Electronics America, Inc.'s ("MELA") Motion for Relief from the Automatic Stay so as to Permit Arbitration to Proceed. This Court has jurisdiction under 28 U.S.C. § 157(b)(2)(B), and the general reference order dated February 11, 1985 by the U.S. District Court for New Hampshire.

## PROCEDURAL HISTORY

A preliminary hearing was held on the motion on October 24, 1990. Then, on November 2, 1990—the claims bar deadline—MELA submitted a proof of claim "in an unliquidated amount not less than $1,221,980.00" based on an alleged breach of a written product development agreement. The claim also provided as follows:

> In filing this proof of claim, Mitsubishi Electronics America, Inc., does not consent to the adjudication of the merits of its dispute with the debtor by the bankruptcy court, or waive its contractual right to have that dispute adjudicated by the American Arbitration Association, but rather reserves and restates its right to arbitration pursuant to the contractual agreement of the parties.

At the continued hearing on the motion for relief on November 14, 1990 I started the hearing by giving MELA the option of either deleting this language from its claim and thereby submitting itself to the jurisdiction of this court or withdrawing the claim. I felt this was consistent with my ruling in *In re BKW Systems, Inc.*, 66 B.R. 546 (Bankr.D.N.H.1986) wherein I held that a creditor involved in prepetition state court litigation with the debtor had an election:

> If Berton elects *not* to file a claim against this estate of course the entire issue as to the California litigation becomes moot because Berton would never share in the assets of this bankruptcy estate and the obtaining of any judgment against the debtor would be a futile exercise. If Berton *does* elect to file a proof of claim in this court on or before the claims deadline, it is clear under the decisions in this district that any hearing upon the proof of claim, and any "arising out of same transaction" counterclaim to the same filed by the debtor, would constitute a core jurisdiction matter in which this court would be fully authorized to proceed, if it should decide that the convenience and interest of the parties in interest did not require abstention or granting of a motion for relief to permit California litigation to proceed to the point of judgment.

*Id.* at 547.

I noted at the hearing that a bankruptcy court must always have jurisdiction to determine when and how claims against the estate are to be determined when disputed.[1] The parties prior to bankruptcy

---

1. Indeed, under the Federal Arbitration Act itself, it is clear that a federal court always has power in the first instance to determine the applicability of an arbitration clause in a contract. 9 U.S.C. § 3. This is true even though ultimately the court may determine that the clause covers the dispute before it and requires stay of its proceeding in favor of the arbitration process. The word "jurisdiction" is always troublesome when used imprecisely, as it is in several instances in the movant's pleadings on the present matter. Regardless of what other restraints there may be upon the bankruptcy court subsumed within the general concept of "jurisdiction" there can be no serious argument that it does not at least have the initial power to hear

cannot "contract away that jurisdiction", and still provide for sharing in the estate. See *In re J.T. Moran Fin. Corp.*, 118 B.R. 233 (Bankr.S.D.N.Y.1990); *In re Edgerton*, 98 B.R. 392 (Bankr.N.D.Ill.1989); see also *WM.S. Newman Brewing v. C. Schmidt and Sons*, 115 B.R. 25 (N.D.N.Y.1990). Of course, as I noted in *BKW Systems, Inc.*, an outside party can request—through stay relief, or a motion for abstention—that the disputed claim be handled in non-bankruptcy court forum. But those remedies do not derive from any question or uncertainty about the power of the court to determine claims against the estate, but rather from legal principles that may permit, or require, that the resolution of particular claims be undertaken elsewhere. Cf. *In re Mor–Ben Ins. Markets Corp.*, 73 B.R. 644, 647 (Bankr. 9th Cir.1987).

I therefore found it improper for MELA to file a claim against this estate which purports to deny the jurisdiction of the court receiving the claim to pass upon its allowance or disallowance. MELA cannot have it both ways, i.e., either the claim is a positive assertion that MELA wants to share in any distribution of this estate, and that it consents to jurisdiction for that purpose, or MELA has not effectively asserted a claim against this estate within the prescribed deadline.[2]

I noted finally that a MELA claim filed without reservation clearly would be a core proceeding under 28 U.S.C. § 157(b)(2)(B), and any counterclaim by the debtor-in-possession would be a core proceeding under 28 U.S.C. § 157(b)(2)(C). Contrary to MELA's assertions, nothing in *Northern Pipeline Constr. Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), would indicate any lack of jurisdiction in this Court to hear and determine the matters involved in a claim against this estate, and any counterclaims arising out of the same transaction, inas-much as the *Northern Pipeline* holding involved only the situation in which a representative of the bankruptcy estate seeks to initiate litigation involving state law in the bankruptcy court against a third party that is not otherwise involved in the bankruptcy proceeding. Cf. *Langenkamp v. C.A. Culp*, —— U.S. ——, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990) (reaffirming bankruptcy court jurisdiction to hear and determine counterclaims against creditors filing claims against bankruptcy estates and denying jury trial rights in that situation which would otherwise exist).

After consideration and discussion of all of the foregoing I allowed MELA to make its election, i.e., MELA did not *have* to submit itself to the jurisdiction of the court handling the administration of the estate if it did not seek payment of its claim from the estate. MELA elected to withdraw the paragraph concerning a reservation of jurisdiction, so I proceeded with the merits of the motion for relief. If MELA had elected not to withdraw the reservation I would have denied the motion for relief, since in my judgment MELA would not have asserted any effective claim against this estate, and MELA could have contested that proposition on appeal.

## KEY FACTS

Chorus Data Systems, Inc. ("Chorus") and MELA entered into a written product Development Agreement dated April 28, 1987. The contract required Chorus to develop a "video interface", which is a certain technology and equipment that would enable MELA to electronically transmit video pictures to a thermal printer manufactured by its parent company, Mitsubishi Electric Corporation of Japan. Paragraph 14 of the Development Agreement is an arbitration clause providing:

and determine how claims against the bankruptcy estate will be resolved. This is of course different than the entirely separate question as to whether the bankruptcy court does or not have discretion to keep a matter in the bankruptcy court for resolution *after* the particular facts and legal principles are established on the record. Cf. *Matter of Hart Ski Mfg. Co.*, 22 B.R. 763, 765 (D.Minn.1982), *aff'd*, 711 F.2d 845 (8th Cir.1983) (arbitration clause enforced by bankruptcy court even though creditor had filed proof of claim).

2. If the latter were true, the pending motion for relief from the automatic stay would be moot, since there would be no point in proceeding further with the arbitration proceeding as to any MELA claim against this estate.

This Agreement shall be construed and enforced under the laws of the State of New Hampshire. If any provision of this Agreement is held invalid, illegal or unenforceable, the remaining provisions will continue unimpaired. In the event any dispute arising out of this Agreement cannot be resolved by the parties, such dispute shall be submitted to binding arbitration to be held in Chicago, Illinois in accordance with the rules of the American Arbitration Association.

Disputes arose between the parties later in the year 1987 regarding the contract in question. The parties negotiated throughout 1988 trying to resolve those disputes but the negotiations ultimately broke down. MELA initiated arbitration proceedings before the American Arbitration Association in Chicago on December 1, 1988. Its claim alleged, among other things, that Chorus delayed in producing the product and failed to give MELA design documentation of the product. MELA claimed $1,221,980.00 by virtue of the asserted breaches of the contract by the debtor.

On January 30, 1989 Chorus filed its first counterclaim against MELA in the arbitration proceeding. On November 30, 1989 Chorus filed a new counterclaim in those proceedings including causes of action for breach of contract, fraud, estoppel and unjust enrichment. On March 17, 1990, after discovery had closed in the arbitration proceeding, and approximately one month before the scheduled commencement of the arbitration hearing on April 24, 1990, the parties at the direction of the arbitration panel filed their detailed damage studies regarding the matter in arbitration. The study filed by Chorus asserted damage claims on all of its causes of action at $862,551.00.

On April 12, 1990 MELA moved in the arbitration proceeding to continue the trial date scheduled for April 24th due to the additional causes of action asserted in the amended counterclaim. On April 17th, 1990 Chorus' attorney in the arbitration proceeding resigned. On April 20, 1990 Chorus filed its voluntary chapter 11 petition in this Court. Consequently, the arbitration proceedings were stayed. The present motion for relief from the automatic stay was filed in this Court by MELA on September 24, 1990, and was heard before the Court on October 24 and November 14, 1990.[3]

On November 14, 1990 Chorus filed a counterclaim against MELA in this Court in Adversary Proceeding No. 90–1153 seeking damages in excess of $40,000,000.00. Chorus now informs this Court that to proceed in arbitration with such a claim it would have to pay an "entry fee" to the American Arbitration Association of $49,250.00. Chorus claims it "has insufficient cash in the estate to satisfy the above-referenced entry fee and still consummate its plan of reorganization." This recent discovery by Chorus that its claim against MELA should be increased fifty-fold, i.e., from some $826,000 to $40,000,000.00, is to say the least suspect in light of the history of the proceedings before the arbitration panel, and before this Court prior to submission of the issue on the arbitration clause for decision. I give those assertions no dispositive weight on the matter for decision. If Chorus really has a valid claim against MELA anywhere in the vicinity of the new amount it should have little difficulty in financing this *relatively* minor filing fee from its secured creditor and those shareholders who have indicated they are willing to support and stand behind the litigation against MELA.

Chorus has filed a plan of reorganization which is not wholly contingent on the out-

---

**3.** On November 14, 1990 the debtor separately filed an adversary proceeding against MELA in this Court (Adversary No. 90–1153) objecting to MELA's proof of claim and asserting its counterclaim against MELA essentially raising the same issues which are pending in the arbitration proceeding. Cf. Bankruptcy Rule 3007. By virtue of mandatory provisions in the Federal Arbitration Act, MELA was forced to move separately for stay of that adversary proceeding to pre-serve its rights with regard to the arbitration. The motion to stay further proceedings in the adversary matter is set for hearing before this Court on January 8, 1991. However, it would appear that those matters are rendered moot by the decision here made on the motion for relief from the automatic stay. If there is any remaining issue in that regard, or if a formal order of stay is necessary, the Court will hear the parties further at the scheduled hearing.

come of its litigation with MELA. In other words, Chorus could have a plan confirmed, and then, if Chorus were later successful in its claim against MELA it could provide an additional distribution to creditors.

It should be noted that earlier in the case the debtor filed an application to employ special counsel to handle the litigation with MELA. However, this application if granted would have bound the estate to specific fees for the special counsel and would have provided for distribution out of any proceeds of the litigation to the shareholders of the debtor who would fund the litigation ahead of general creditors. The motion also would have required that a secured creditor bank holding a lien on general intangibles also be given a share of the proceeds. The Court denied that motion without prejudice to the incorporation of such provisions within a plan of reorganization. Such provisions with regard to retention of counsel, providing for distribution of the major asset of the estate, in my judgment would require the formal procedures and safeguards of a disclosure statement and voting by creditors under plan procedures.[4]

### STATUTES INVOLVED

The question presented for decision involves two federal statutes that can in certain circumstances overlap and conflict, i.e., The Federal Arbitration Act, 9 U.S.C. §§ 1–14, and the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

The key provisions of the Arbitration Act are §§ 2 and 3 of Title 9, which provide as follows:

§ 2. *Validity, irrevocability, and enforcement of agreements to arbitrate.*

A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

§ 3. *Stay of proceedings where issue therein referable to arbitration.*

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

The key provisions of the Bankruptcy Code include Subchapter I of Chapter 5 of the Code, 11 U.S.C. §§ 501–510, providing for the filing and allowance of claims against the bankruptcy estate, and Subchapter III of Chapter 5, 11 U.S.C. §§ 541–559, defining the bankruptcy estate. Also relevant is § 362 of the Code providing an automatic stay against any actions against the debtor or bankruptcy estate without leave obtained from the bankruptcy court.

Bankruptcy Rule 3007 is pertinent in that it provides that if any objection to a claim against the estate is joined with a demand for relief such as a counterclaim the claims objection becomes an adversary proceeding subject to Part VII of the Bankruptcy Rules. The result is that the matter will be litigated in effect as ordinary civil litigation under the Federal Rules of Civil Procedure with some minor modifications.

Also relevant are the jurisdictional provisions of 28 U.S.C. §§ 157 and 1334 which provide for, and define, those "core proceedings" which the bankruptcy court may hear and determine with regarding claims by and against the bankruptcy estate.

---

4. The debtor's disclosure statement in that regard was approved by this Court by a bench ruling on December 11, 1990. If the creditors approve the proposal and the shareholders provide the funding the debtor will be able to pursue the litigation against MELA under the proposed terms of retention of counsel and distribution of proceeds.

## LEGISLATIVE HISTORY

The pertinent legislative history with regard to the Federal Arbitration Act is well-summarized in *Dean Whitter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219–220, 105 S.Ct. 1238, 1242, 84 L.Ed.2d 158 (1985), as follows:

The legislative history of the Act establishes that the purpose behind its passage was to ensure judicial enforcement of privately made agreements to arbitrate. We therefore reject the suggestion that the overriding goal of the Arbitration Act was to promote the expeditious resolution of claims. The Act, after all, does not mandate the arbitration of all claims, but merely the enforcement—upon the motion of one of the parties—of privately negotiated arbitration agreements. The House Report accompanying the Act makes clear that its purpose was to place an arbitration agreement "upon the same footing as other contracts, where it belongs," H.R. Rep. No. 96, 68th Cong., 1st Sess., 1 (1924), and to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate.

\* \* \* \* \* \*

We therefore are not persuaded by the argument that the conflict between two goals of the Arbitration Act—enforcement of private agreements and encouragement of efficient and speedy dispute resolution—must be resolved in favor of the latter in order to realize the intent of the drafters. The preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered, and that concern requires that we rigorously enforce agreements to arbitrate, even if the result is "piecemeal" litigation at least absent a countervailing policy manifested in another federal statute.

## GENERAL PRINCIPLES

MELA argues that once it has established that the parties' contract includes a bargained for arbitration clause which broadly covers "any dispute" the bankruptcy court retains no discretion to refuse to enforce the arbitration clause, except in very rare and exceptional circumstances not here pertinent. I disagree since it seems clear from the reported decisions that any federal court retains the discretion to determine whether a showing has been made "that Congress intended in a separate statute to preclude a waiver of judicial remedies, or that such a waiver of judicial remedies inherently conflicts with the underlying purposes of that other statute." *Rodgriguez De Quijas v. Shearson/American Express*, 490 U.S. 477, 109 S.Ct. 1917, 1921, 104 L.Ed.2d 526 (1989) (collecting and citing prior Supreme Court decisions); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985) (establishing "two step inquiry" with second inquiry to consider "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims"). See also *Wm. S. Newman Co. v. C. Schmidt & Sons*, 115 B.R. 25, 27 (N.D.N.Y. 1990) (citing Second Circuit cases upholding bankruptcy court discretion re arbitration clauses). However, the fact that a federal court retains that discretion does not mean that there are not specific limits to the exercise of that discretion as developed by the reported cases.

■ I start with the now well-established proposition that there is a strong federal policy favoring arbitration which can only be overridden if the party opposing arbitration makes a showing of a clear conflict with another federal statute. As the Supreme Court stated in *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987): [5]

The Arbitration Act thus establishes a "federal policy favoring arbitration," *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983), requiring that "we rigorously enforce

---

**5.** This case involved claims brought in a federal district court under RICO and section 10(b) of the Securities and Exchange Act of 1934.

agreements to arbitrate". *Dean Whitter Reynolds, Inc., v. Byrd,* 470 U.S. at 221, 105 S.Ct. at 1243. This duty to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded on statutory rights. As we observed in *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc., supra,* "we are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals" should inhibit enforcement of the Act " 'in controversies based on statutes.' " 473 U.S., at 627, 105 S.Ct. at 3354, quoting *Wilko v. Swan,* 346 U.S. 427, 432, 74 S.Ct. 182, 185, 98 L.Ed. 168 (1953). Absent a well-founded claim that an arbitration agreement resulted from the sort of fraud or excessive economic power that "would provide grounds 'for the revocation of any contract,' " 473 U.S., at 627 [105 S.Ct. at 3354] the Arbitration Act "provides no basis for disfavoring agreements to arbitrate statutory claims by skewing the otherwise hospitable inquiry into arbitrable." *Ibid.*

The Arbitration Act, standing alone, therefore mandates enforcement of agreements to arbitrate statutory claims. Like any statutory directive, the Arbitration Act's mandate may be overridden by a contrary congressional command. The burden is on the party opposing arbitration, however, to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue. See *id.,* at 628 [105 S.Ct. at 3354]. If Congress did intend to limit or prohibit waiver of a judicial forum for a particular claim, such an intent "will be deducible from [the statute's] text or legislative history," *ibid.,* or from an inherent conflict between arbitration and the statute's underlying purposes. See *Id.,* at 632–637 [105 S.Ct. at 3356–3359]; *Dean Whitter Reynolds, Inc. v. Byrd, supra,* 470 U.S., at 217 [105 S.Ct. at 1240].

See also *New England Energy Inc. v. Keystone Shipping Co.,* 855 F.2d 1, 4 (1st Cir.1988).

■ Therefore, I believe under the Supreme Court precedents there is discretion but in the bankruptcy context there must be a demonstrated specific conflict between enforcing an arbitration clause and the textual provisions and/or purposes of the Bankruptcy Code to justify the exercise of discretion by a bankruptcy court in refusing to enforce an arbitration clause. See also *Wm. S. Newman Brewing Co., Inc. v. C. Schmidt and Sons, Inc.,* 115 B.R. 25 (N.D.N.Y.1990); *In re FRG,* 115 B.R. 72 (E.D.Pa.1990); *In re Chase P. Young Co.,* 111 B.R. 410 (Bankr.S.D.N.Y.1990); *Allegaert v. Perot,* 548 F.2d 432 (2d Cir.1977).

It is noteworthy that the most recent Court of Appeals decision on this issue has indicated in dictum that even in a *non-core* matter a bankruptcy court might have discretion to refuse arbitration. The Third Circuit in *Hays and Company v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 885 F.2d 1149, 1156, 1161 (3d Cir.1989) [6] held that an arbitration clause regarding a non-core matter should be enforced in bankruptcy but also stated:

Thus, the district court lacked the authority and discretion to deny enforcement of the arbitration clause unless Hays had met its burden of showing that the text, legislative history, or purpose of the Bankruptcy Code conflicts with the enforcement, of an arbitration clause in a case of this kind, that is, a non-core proceeding.

\*   \*   \*   \*   \*   \*

The message we get from these recent [Supreme Court] cases is that we must carefully determine whether any underlying purpose of the Bankruptcy Code would be adversely affected by enforcing an arbitration clause and that we should enforce such a clause unless that effect would seriously jeopardize the objectives

---

**6.** This Court of Appeals had earlier rendered a decision on the conflict between the Arbitration Act and the 1978 Bankruptcy Code (as it existed prior to the Northern Pipeline invalidation decision) in *Zimmerman v. Continental Airlines, Inc.,* 712 F.2d 55 (3d Cir.1983). In light of the more recent opinion in *Hays* the rationale in *Zimmerman* is no longer pertinent but its holding regarding core matters survives. See *In re FRG,* 115 B.R. 72 (E.D.Pa.1990) (*Hays* holding does not apply to core matters).

of the Code. Where, as here, a trustee seeks to enforce a claim inherited from the debtor in an adversary proceeding in a district court, we perceive no adverse effect on the underlying purposes of the code from enforcing arbitration—certainly no adverse effect of sufficient magnitude to relieve a district court of its mandatory duty under the Arbitration Act as interpreted in the recent case law.

The need for an allowance for discretion is much clearer when there is a claim against the estate. See *In re Morgan*, 28 B.R. 3, 5 (Bankr.9th Cir., 1983) ("The Arbitration Act strongly favors resolution of disputes by arbitration. This policy conflicts with that in favor of resolving claims against the debtor in the bankruptcy court."); See also *In re FRG, supra; In re J.T. Moran Fin. Corp.*, 118 B.R. 233 (Bankr.S.D.N.Y.1990).

■ In evaluating how to exercise this discretion I do not agree with those courts that have tried to determine what is the "preferable forum" procedurally, or whether the arbitration panel "makeup" is good. See, e.g., *In re Bicoastal Corp.*, 111 B.R. 999 (Bankr.M.D.Fla.1990); *In re Edgerton*, 98 B.R. 392 (Bankr.N.D.Ill.1989); *In re R.M. Cordova Inter'l, Inc.*, 77 B.R. 441 (Bankr.D.N.J.1987); *In re Double TRL, Inc.*, 65 B.R. 993 (Bankr.E.D.N.Y.1986); see also *In re Guild Music Corp.*, 100 B.R. 624 (Bankr.D.R.I.1989). The Supreme Court has made it unmistakably clear that such qualitative judgments about the desirability of arbitration procedures are not a proper factor in deciding whether to exercise discretion to refuse to enforce an arbitration provision. *Rodgriguez De Quijas v. Shearson/American Express, supra; Shearson/American Express, Inc. v. McMahon, supra; Dean Whitter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217, 105 S.Ct. 1238, 1240, 84 L.Ed.2d 158 (1985) (arbitration to be compelled "even where the result would be the possible inefficient maintenance of separate proceedings in separate forums").

Moreover, the fact that arbitration may not be as "efficient" or as "expeditious" has been held not to *per se* justify refusal to enforce an arbitration clause even in the bankruptcy context. See, e.g., *Matter of Hart Ski Mfg. Co.*, 22 B.R. 763, 765 (D.Minn.1982), *aff'd*, 711 F.2d 845 (8th Cir. 1983) (financial disadvantage or inconvenience to debtor insufficient); *In re Mor-Ben Corp., supra*, 73 B.R. at 647 (arbitration need not be "most expeditious" and debtor required to arbitrate in London); *In re Edgerton, supra*, (debtor's "sole asset" lawsuit required to go to arbitration).

■■ Accordingly, in my view the only proper inquiry for a bankruptcy court in these circumstances is whether the text or purposes of the Bankruptcy Code would be violated so significantly by enforcing an arbitration clause in the particular factual circumstances of the case before the Court that it can fairly be said that Congress would not have intended those provisions or purposes to be overridden by the Federal Arbitration Act. Furthermore in making that inquiry it is not open to the bankruptcy court to define a "conflict" with the Bankruptcy Code so broadly as to swallow up the policies underlying the Arbitration Act. There must be a good faith effort to balance the competing policies of the two federal statutes as applied to the particular case. Finally, it is important to remember that the burden of proof is on the debtor in opposing the lifting of the automatic stay. See *In re Allen & Hein, Inc.*, 59 B.R. 733 (Bankr.S.D.Cal.1986); § 362(g)(2).

## MISCELLANEOUS ARGUMENTS

■ Before applying the foregoing general principles relating to the court's discretion to the specific facts and circumstances of this case it is necessary to deal with a number of alternative arguments put forth by the debtor. The debtor argues that under New Hampshire law its "fraud in the inception" contention would not be arbitrable, citing *Pittsfield Weaving Co. v. Grove Textiles, Inc.*, 121 N.H. 344, 430 A.2d 638 (1981). That decision was bottomed upon a contention that "the contract of the parties, *including the arbitration clause*, was unenforceable because it was unconscionable and a contract of adhesion...." and thus could under *federal* law support a refusal to enforce the arbitration clause. *Id.*, at p. 347, 430 A.2d 638. Whatever the rule may

be in state court, in federal court I will follow the prevailing rule developed from the seminal decision in *Prima Paint Corp. v. Flood & Conklin,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). As one Circuit Court of Appeals explained:

> In *Prima Paint,* the Supreme Court drew a clear distinction between claims of "fraud in the inducement of the arbitration clause itself" and claims of "fraud in the inducement of the contract generally." 388 U.S. at 402–04, 87 S.Ct. at 1805–06. It held that the first claim (fraud in the inducement of the arbitration clause) is one for resolution by the court, and the second (fraud in the inducement of the contract generally) is for the arbitrator. *Id. See also Mar-Len of Louisiana, Inc. v. Parsons–Gilbane,* 773 F.2d 633, 636 (5th Cir.1985); *S.A. Mineracco Da Trindade–Samitri v. Utah Intern,* 745 F.2d 190, 194, 195 (2d Cir.1984); *Life of America Ins. Co. v. Aetna Life Ins. Co.,* 744 F.2d 409, 413 (5th Cir.1984); *Sea–Land Service, Inc. v. Sea–Land of Puerto Rico, Inc.,* 636 F.Supp. 750, 753–54 (D.P.R.1986); *Hannah Furniture Co. v. Workbench, Inc.,* 561 F.Supp. 1243, 1244–45 (W.D.Pa.1983). This distinction was clearly restated and applied by the Supreme Court in *Moses H. Cone,* 460 U.S. at 24, 103 S.Ct. at 941, and is dispositive against the contention of the plaintiff.

*Peoples Security Life Ins. Co. v. Monumental Life Ins. Co.,* 867 F.2d 809, 813–14 (4th Cir.1989). See also *Slomkowski v. Craig–Hallum, Inc.,* 644 F.Supp. 132, 134 (D.Minn.1986).

This case is particularly instructive because the court refused to find fraud where the parties are "sophisticated." The court stated:

> Both parties to this agreement were represented throughout the negotiations of the contract by able and experienced counsel. Further, the officers of both parties who engaged in the contract negotiations were sophisticated business men who negotiated at arms' length. We are unwilling to disregard what we discern to be clear language in favor of a claim of overreaching by one of the parties in a case such as this.

*Id.* at 814. See also *Curtis v. Newhard Cook & Co., Inc.,* 725 F.Supp. 1072, 1074–75 (E.D.Mo.1989).

Moreover, the more recent Supreme Court cases say the allegations of fraud must be "well-founded." See *Rodgriguez De Quijas v. Shearson/American Express, supra,* 109 S.Ct. at p. 1921; *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc., supra,* 473 U.S. at p. 627, 105 S.Ct. at 3354.

■ In the present case, the debtor has not come close to making the "well-founded" claim of general fraud or other grounds for revocation of the entire contract—assuming I could pass judgment on this issue—sufficient to bar enforcement of the arbitration clause on that ground alone. The debtor submitted no affidavits and even its allegations before the Court on the stay relief motion simply amounts to an assertion that because MELA had the temerity to wire $100,000.00 in cash to the debtor at the ending stages of negotiations the debtor could not resist the temptation and signed the contract.[7] A federal court in my judgment should scrutinize contentions with regard to fraud in the inception of the contract or with regard to the arbitration clause to prevent a too facile resort to such contentions to prevent enforcement of arbitration clauses. I believe that that is the genesis of the Supreme Court's repeated reference to "well-founded" contentions in that regard. To do otherwise could lead to the wholesale evisceration of the Federal Arbitration Act.

■ The debtor also argues that the arbitration clause is a separate and distinct

---

7. With regard to the *agreement to arbitrate* the debtor also contends that it was induced to agree to that provision by fraud or duress. However, no affidavits or other indication of such actions by MELA sufficient to constitute a "well-founded" contention in that regard is also absent in this record. The debtor's feeble efforts to raise this issue by the allegations in its memorandum are simply conclusory and to the extent that they imply the issues were preserved by cover letter for the signed contract are contradicted by the actual letter of May 4, 1987. [Exhibit attached to Debtor's Complaint in Adversary Proceeding No. 90–1153].

agreement subject to the Bankruptcy Code Section 365 rejection power. There is no authority to support this proposition. On the contrary, this contention was rejected in *Hays and Company v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 885 F.2d 1149, 1153, n. 5 (3d Cir.1989).

The debtor's further contentions with regard to the alleged improper makeup of the arbitration panel, and the perceived deficiencies of arbitration proceedings as opposed to judicial proceedings, although supported by some of the lower court opinions cited above, are not in my opinion well-taken in view of the restraints imposed upon judicial discretion with regard to enforcement of arbitration clause as developed above.[8]

## EXERCISE OF DISCRETION

■ Turning now to the key issue for decision on the matter before this Court, i.e., exercise of discretion with regard to enforcing arbitration clauses, the debtor argues that enforcement of the clause in this case will hamper the debtor in its chapter 11 proceeding by requiring it to expend additional costs in going to Chicago for the arbitration proceedings and taking its key executives away from the operation of the business in New Hampshire for that purpose. However, arbitration clauses have been enforced against domestic companies in reorganization even when such enforcement would require them to attend arbitration proceedings in foreign countries. More importantly, the record does not establish the proposition that travel to Chicago from New Hampshire for purposes of the arbitration hearing would be so expensive or so disruptive that it would interfere with the debtor's operations or its reorganization.

A more pertinent argument for the debtor would be a contention that it cannot proceed with a necessary reorganization of its financial affairs until the matter in dispute is resolved, and that the arbitration proceeding will require a substantially longer time for resolution than the judicial proceedings in the reorganization court. Here however the debtor is stymied in making this contention for a number of reasons. First, the record of this case establishes that the debtor *can* proceed with its reorganization plan notwithstanding the delay attendant to the resolution of the MELA dispute. Second, it is not at all clear that the obtaining of a decision by the arbitration panel will take any substantial longer period of time than obtaining a judgment in this Court.[9] Third, arbitration can resolve the dispute and claims of the parties *with relative finality* unavailable in a judicial proceeding involving full appellate rights. Accordingly, this Court cannot conclude that enforcing the arbitration clause in these particular circumstances will frustrate the reorganization of this debtor. Indeed, the "reorganization" of this debtor largely involves simply marking time in its business operations while the litigation with MELA proceeds toward a hoped-for substantial financial recovery. The distribution to creditors available otherwise is minimal.

## CONCLUSION

■ The Court in exercising its discretion has to be careful not to fashion a rule so broad that it would in effect result in denial of enforceability of arbitration claus-

---

8. See also discussion in *Hays and Company v. Merrill Lynch*, 885 F.2d 1149, 1160 (3rd Cir. 1989), rejecting "potential complexity" and lack of "adequate discovery" asserted problems with arbitration proceedings as justification for refusing arbitration under controlling Supreme Court precedents, citing *Rodgriguez De Quijas v. Shearson/American Express, supra; McMahon, supra; Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth Inc.*, 473 U.S. 614, 632–40, 105 S.Ct. 3346, 3356–3360, 87 L.Ed.2d 444 (1985); *Dean Whitter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 220, 105 S.Ct. 1238, 1242, 84 L.Ed.2d 158 (1985).

9. The current caseload and calendar in this District makes it all but certain that a trial on a matter of this complexity could not be conducted by this Court earlier than one year from date. The Court notes in this regard that Chorus estimated that 75 to 125 hours of hearing time would be required in the arbitration proceeding. There is no reason to believe that less trial time would be required in a judicial proceeding. This Court is a "one-man band" in a district that has had the highest percentage increase (just under 100 percent) in the nation in the past year.

es in all chapter 11 bankruptcy reorganization proceedings. It is very easy to assert additional costs and delay factors in a generic sense with the easy assumption that the claims in dispute could be resolved more quickly in the Bankruptcy Court. Broad generic assumptions in that regard however should not be used to defeat the enforceability of an arbitration clause just because a debtor is in a bankruptcy proceeding. It all depends upon the particular proceeding and the particular facts involved. In this case it is my judgment that the exercise of this Court's discretion, trying to accommodate the legitimate policies underlying both the Federal Arbitration Act and the Bankruptcy Code, should be in the direction of the enforcement of the arbitration clause bargained for by the parties in their contractual dealings.[10] A separate order to that effect shall be entered. The order will provide that the arbitration proceeding may go forward with *both* the Mitsubishi claim and the debtor's counterclaim now pending in that proceeding. Cf. *In re Edgerton*, 98 B.R. 392, 395 (Bankr.N.D.Ill.1989).

---

**10.** This disposition renders unnecessary any decision on MELA's alternative argument that mandatory abstention under 28 U.S.C. § 1334(c) is required. Both the debtor and MELA are Delaware corporations and accordingly trigger the requirement that the suit could not be brought in a federal court absent the bankruptcy. However, it is not clear that the reference to the alternative state "forum" in § 1334(c) includes an arbitration panel. That question is left for another day.