## In re TRIDENT SHIPWORKS, INC., Debtor.

### Bankruptcy No. 99–01544–8P1.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

July 27, 1999.

Don M. Stichter, Tampa, FL, for debtor.

Benjamin E. Landers, Tampa, FL, for The United States Trustee.

Rod Anderson, Noel R. Boeke, Tampa, FL, for Sea Quest International.

**ORDER ON MOTION FOR RELIEF FROM STAY, FOR ABSTENTION, AND MOTION TO COMPEL DEBTOR TO ASSUME OR REJECT EXECUTORY CONTRACT FILED BY SEA QUEST INTERNATIONAL, INC. (DOC. NO. 52)**

ALEXANDER L. PASKAY, Chief Judge.

THE CONTROVERSY under consideration in the Chapter 11 case of Trident Shipworks, Inc. (Debtor) brings into play a seeming conflict between 28 U.S.C. § 1334, 11 U.S.C. § 362(a) and 9 U.S.C. § 1 *et seq.*, the Federal Arbitration Act. In order to place the controversy in its proper setting, a brief summary of the relevant facts, none of which are in serious dispute, should be helpful.

On November 7, 1996, Sea Quest International, Inc. (Sea Quest) entered into a contract with the Debtor. Under the Contract, the Debtor agreed to build a luxury yacht pursuant to the specifications provided by Sea Quest. The yacht was to be delivered in November 1998. Sea Quest made progress payments and paid the Debtor in excess of $5,300,000. On November 13, 1998, Sea Quest gave formal notice of default to the Debtor, including among other specified contractual defaults, the Debtor's failure to deliver the yacht on or before the date specified by the Contract. On December 14, 1998, Sea Quest, relying on Paragraph 21 of the Contract, demanded that the matter to be submitted to arbitration. The Contract provided, *inter alia* that in the event a dispute developed between the parties, either party may initiate arbitration by sending a written notice to the other of the election of that right by specifying the dispute to be arbitrated.

The arbitration hearing commenced on February 1, 1999. On the same date, the parties and one of the arbitrators executed a document entitled "Preferential Order for Hearing." The document provided that all motions and objections would be governed by the AAA Commercial Arbitration Rules and would not be governed by local, state and federal court rules and procedures. On February 3, 1999, the Arbitrators issued an interim damage award in favor of Sea Quest in the amount of $700,000, specifically finding that the hull of the yacht was defective. The arbitration came to a sudden halt when the Debtor filed its Petition for Relief under Chapter 11 of the Bankruptcy Code on the same date. It appears that the Debtor became disturbed by the way the arbitration proceeded, especially in light of the arbitrators issuing an interim damage award without receiving any evidence on damages.

Sea Quest did not like this turn of events and wasted no time filing the pres-

ent Motion under consideration. In its Motion, Sea Quest requests that this Court abstain and defer the resolution of the dispute to the arbitrators or, in the alternative, to be relieved from the automatic stay in order to complete the suddenly interrupted arbitration. In support of its request for relief, Sea Quest contends that a party to an arbitration agreement may litigate in a court of law but has only one choice but to seek relief pursuant to Section 10 of the Federal Arbitration Act. Under this Section, a party aggrieved by the decision of the arbitration panel must file a motion to vacate the award in the U.S. District Court. *See Corey v. New York Stock Exchange,* 691 F.2d 1205 (6th Cir.1982); *Booth v. Hume Pub., Inc.,* 902 F.2d 925 (11th Cir.1990).

In opposing the relief sought by Sea Quest, the Debtor contends that the matter involved in the arbitration is nothing more than the liquidation of a claim, a pure "core" matter which should be resolved by the bankruptcy court. Rather than challenge the right of Sea Quest to compel abstention or focus on the impact that the arbitration will have on the Debtor's efforts to reorganize, the Debtor emphasized and cited authorities which set forth the factors which courts have considered in deciding the proper forum for liquidation of claims against a debtor.

Although the Motion seeks an abstention, the abstention provisions of 28 U.S.C. § 1334(c)(1) (optional) and (2) (mandatory) have no relevancy to the matter under consideration. Both provisions deal with civil litigation based on state law commenced either before or after bankruptcy. It is true that the Bankruptcy Code deals with the situation where the resolution of the proceeding requires consideration of both the Code and other laws of the United States regulating organizations and activities affecting interstate commerce. However, it is evident that this provision of 28 U.S.C. § 157(d) equally furnishes no support for the request for abstention because this Section deals with withdrawal of the reference and deals only with the involvement of a federal statute regulating organizations and the activities affecting interstate commerce. The present controversy certainly does not involve the regulation of an organization or an activity affecting interstate commerce and there is no request to withdraw the reference.

This leads to consideration of the alternative relief sought which is relief from the automatic stay in order to proceed and complete the arbitration. The only applicable basis for the relief sought is 11 U.S.C. § 362(d)(1). This Section provides that the stay may be lifted for "cause." The term "cause" has not been defined by the Bankruptcy Code and courts have applied this basis for stay relief under a variety of factual situations.

The present fact situation has been considered by several courts in the past and it is not surprising that there is no general consensus among the courts regarding how to resolve the interplay between the Federal Arbitration Act and the Bankruptcy Code without violating the Congressional intent of either.

The Federal Arbitration Act was designed to ensure judicial enforcement of privately made agreements to arbitrate. The overriding goal of Congress in enacting this Act was to promote the expeditious resolution of claims. *See In re Chorus Data Systems, Inc.,* 122 B.R. 845 (Bankr.N.H.1990). The overriding principle of current bankruptcy legislation is that claims against the estate of a debtor shall be resolved in one single forum and a proliferation of litigation in nonbankruptcy forums frequently located in several states distant from the bankruptcy court where the case is pending would be counterproductive to the well recognized principle which always required an expeditious administration of the estate of debtors.

One of the first cases involving the issue under consideration is the case of *Zimmerman v. Continental Airlines Inc.,* 712 F.2d 55 (3rd Cir.1983) cert. denied 464

U.S. 1038, 104 S.Ct. 699, 79 L.Ed.2d 165 (1984). In *Zimmerman*, the bankruptcy court refused to lift the stay to allow the continuation of a pending arbitration. The Third Circuit Court of Appeals affirmed the decision, emphasizing the need for the expeditious resolution of bankruptcy matters and that the intention of Congress would be better served if the Bankruptcy Reform Act impliedly modified the Federal Arbitration Act.

The issue was revisited by the Third Circuit in *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149 (3rd Cir.1989), after the jurisdiction of the bankruptcy courts was restructured to limit their power to enter dispositive orders only in "core" matters. 28 U.S.C. § 157(b). The Third Circuit remanded the matter because the district court failed to explain what factors it took into consideration in affirming the bankruptcy court's refusal to lift the stay. Ultimately, the Third Circuit concluded that a denial of the motion to compel arbitration could lead to either full scale litigation in the district court or, if tried in the bankruptcy court as a non-core matter, the bankruptcy court may only make findings of fact and conclusions of law which, if challenged, would require a de novo review by the district court. Each of these avenues has the potential to cause delay which would not be the case if the issues are resolved by arbitration.

A review of subsequent cases dealing with this issue, reveals that courts have found that certain factors are relevant and should be considered when the issue is raised. For instance, this Court in *In re Bicoastal Corp.*, 111 B.R. 999 (Bankr. M.D.Fla.1990), relying on *In re Edgerton*, 98 B.R. 392 (Bankr.N.D.Ill.1989) applied the following factors: the degree to which the nature and extent of litigation and evidence would make the judicial forum preferable to arbitration; the extent to which special expertise is necessary to resolve the dispute; and the identity of the persons comprising the arbitration panel and their track record in resolving disputes. In *Bicoastal, supra*, the dispute involved fine points of defense contract accounting. This Court found that an accounting arbitrator with experience in defense contract accounting was in a preferable position than the court to resolve the dispute. In addition, the Court also found that arbitration would relieve the court from dealing with complex and esoteric issues; arbitration would be judicially and financially economical and would not negatively impact the Debtor's reorganization efforts.

Some courts focused on the core versus non-core nature of the dispute. In the case of *In re Spectrum Information Technologies, Inc.*, 183 B.R. 360 (Bankr. E.D.N.Y.1995), the court held that in the Second Circuit, contrary to the Third Circuit decision in *Hays, supra*, arbitration should not triumph over the specific jurisdiction of the bankruptcy court, especially with respect to core proceedings. *Spectrum* involved a claim to rescind a directors and officers liability policy. The court noted that the court has the discretion to permit the arbitration to proceed and that in doing so, the court should consider the same factors set forth in *Bicoastal* and *Edgerton, supra*.

The Court in *In re Guild Music Corp.*, 100 B.R. 624 (Bankr.R.I.1989) concluded that only non-core matters should be subject to arbitration. Notwithstanding, the court stated that it has discretion to decline to permit arbitration after having considered the factors discussed earlier.

Neither research of counsel or independent research revealed any controlling and relevant decision by the Eleventh Circuit Court of Appeals, although the Court did consider the issue of litigation versus arbitration in a non-bankruptcy context. *See Booth v. Hume Pub., Inc.*, 902 F.2d 925 (11th Cir.1990). In *Booth*, the Eleventh Circuit Court of Appeals expressed strong views in favor of arbitration, stating that it would be inconsistent with the language and purpose of the Federal Arbitration Act

to permit counterclaims other than counterclaims which fall within the specific defenses permitted by Sections 10 and 11 of the Arbitration Act. The court placed great emphasis on the announced purpose of the Arbitration Act which is to relieve congestion of courts and to provide parties with an alternative method for dispute resolution that would be speedier and less costly than litigation. Clearly, there was no countervailing policy speaking against arbitration in *Booth*, which of course is ever present when one of the parties involved is a debtor involved in a pending bankruptcy case, especially if the debtor is in a Chapter 11 case seeking to return to a healthy economic life in the market place. Thus, *Booth, supra,* has slight if any persuasive force in the present instance.

The present dispute is a contract dispute involving the construction of a luxury yacht, clearly a non-core matter. *See Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Thus, this Court may not enter a final dispositive order and its jurisdiction is limited to submitting proposed findings of fact and conclusions of law to the district court. 28 U.S.C. § 157(c)(1). However, it is equally true that the dispute involves a claim against the Debtor, the allowance or estimation of which are purely core matters. 28 U.S.C. § 157(b)(2)(B).

In this case, the claim of Sea Quest is clearly an unliquidated claim. Before it may be allowed, it must be liquidated or if not possible estimated. Since the arbitration hearing had already commenced, theoretically, the arbitration could be concluded without unacceptable delay. The Chapter 11 case is pending only since February 3, 1999 and as complex Chapter 11 cases go, it is in an embryonic stage and not close to confirmation. Thus, the dispute could equally be resolved in this Court as speedily as the arbitration if the dispute is procedurally presented in the form of an objection to Sea Quest's claim.

The fact that the Federal Rules of Civil Procedure and the Federal Rules of Bankruptcy Procedure do not apply under the Federal Arbitration Act is a distinction without difference. The difference in procedure would not have a negative impact on this Court's ability to expedite the resolution of this dispute. The nature of the dispute, however, indicates that the dispute is loaded with highly technical esoteric specialized yacht construction issues which certainly require substantial expertise to resolve. This fact might ordinarily speak in favor of arbitration. However, upon a close analysis, this dispute is not much different from other disputes requiring expert testimony which were resolved by this Court in the past. *See e.g. In re Hillsborough Holdings Corp.,* 190 B.R. 676 (Bankr.M.D.Fla.1995) (sustaining objection to claim on basis that claimant failed to show that debtor had negligently located start-up point for longwall coal mining operation south of area of minable coal and to otherwise prove right to claimed royalties); *In re Hillsborough Holdings Corp.,* 207 B.R. 299 (Bankr.M.D.Fla.1997) (partially sustaining objection to gas rights owners' claim on basis that under Alabama law, coalbed methane gas extracted by debtor through vertical wells and horizontal bore holes was captured by debtor before it left coal strata and thus belonged to debtor, as lessee of coal owner, rather than to gas rights owners); *In re Bicoastal Corp.,* 134 B.R. 50 (Bankr.M.D.Fla. 1991) (United States' claim that debtor intentionally overcharged government on numerous contracts was estimated after finding that the amount of reserve which contractor failed to disclose to government was the proper measure of damages suffered by government.). In sum, the extent that special expertise is necessary will be the same whether the matter is arbitrated or litigated in this Court. With respect to the third factor, there is no evidence here as to the composition of the arbitration panel and, therefore, it is impossible to determine the track record of this particular panel. The Debtor contends, albeit

without proof, that the panel acted improperly and was possibly biased or incompetent. Be that as it may, this Court is satisfied that, considering the totality of the picture, this record is insufficient to find "cause" to lift the stay or to abstain. It is appropriate, therefore, to schedule a final evidentiary hearing on this issue.

Accordingly it is

ORDERED, ADJUDGED AND DE-CREED that the ruling on the Motion for Relief From Stay, For Abstention, and Motion to Compel Debtor to Assume or Reject Executory Contract Filed by Sea Quest International, Inc. (Doc. No. 52) is hereby deferred. A final evidentiary hearing is hereby scheduled on the issue of the identity of the persons comprising the arbitration panel and their track record in resolving disputes.