**In re Ethel M. MINTZE, Debtor.**

**Ethel M. Mintze, Plaintiff,**

v.

**American General Finance, Inc. and American General Consumer Discount, Co., Defendants.**

**Bankruptcy No. 01–36979.
Adversary No. 02–0524 KJC.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Jan. 17, 2003.

---

Irv Ackelsberg, Philadelphia, PA, for Ethel Marie Mintze.

Caroline A. Flotron, Philadelphia, PA, for American General Finance, Inc.

### MEMORANDUM OPINION [1]

KEVIN J. CAREY, Bankruptcy Judge.

On December 4, 2001, Ethel M. Mintze (the "Debtor") filed a voluntary chapter 13 bankruptcy petition. On December 21, 2001, American General Finance, Inc. and American General Consumer Discount Co. (collectively, "American General"), filed a proof of claim that asserted a secured claim of $44,049.69, arising out of a mortgage loan made by American General to the Debtor in 2000.

On April 19, 2002, the Debtor filed a complaint objecting to American General's secured claim. In the complaint, the Debtor contends that American General induced her into entering into an illegal and abusive home equity loan that resulted in a mortgage lien on her home held by American General. Further, the Debtor seeks to enforce an earlier rescission of the mortgage that was asserted prior to the bankruptcy pursuant to the Truth In Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"). The Debtor also asserted consumer protection claims under TILA, the Home Owners Equity Protection Act ("HOEPA"), the Equal Credit Opportunity Act ("ECOA"), the Pennsylvania Home Improvement Finance Act ("HIFA"), and

---

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, § 157(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (K) and (O).

the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL").

On May 20, 2002, American General filed a Motion To Dismiss And Compel Arbitration (the "Arbitration Motion").[2] On August 28, 2002, the Debtor responded by filing a Memorandum Of Law In Opposition To Defendants' Motion To Dismiss And Compel Arbitration (the "Debtor's Memorandum"). On September 13, 2002, American General filed a Reply Brief In Support Of Their Motion To Dismiss And Compel Arbitration. On September 23, 2002, the Debtor answered in the form of a Letter Brief In Surreply Of Defendant's Reply Brief. A hearing was held on November 7, 2002, at which time both the Debtor and American General presented oral argument with respect to the Arbitration Motion.

For the reasons that follow, I conclude that American General's Arbitration Motion should be denied.

### FACTUAL ALLEGATIONS

The Debtor's complaint includes the following allegations of fact: The Debtor is a retired and disabled[3] homeowner who, in late 2000, contacted a heating contractor named A & M Heating for the purpose of getting a new heater installed in her home at a cost of $3,800. A & M referred the Debtor to American General for financing of the heater installation.

American General agreed to extend credit to the Debtor to finance the heater installation, but required, as a condition of its extension of credit, that the Debtor borrow nearly $45,000 in the form of a home equity loan, which would not only refinance her existing mortgage, but would also consolidate her existing credit card debt. On October 20, 2000, the Debtor entered into a loan agreement with American General for the principal amount of $44,716.34 (the "Loan Agreement"). The loan carries an annual percentage rate of 13.44% and is payable over 15 years in monthly payments of $551.13. The Loan Agreement also included a "demand" provision whereby American General could accelerate the loan and demand full payment at any time it chose to do so, after the first five years of the loan. The Debtor also asserts that the loan principal included settlement charges of $2,821 and over $2,000 for premiums for two insurance policies arranged by American General.[4]

---

**2.** American General agreed at the hearing that its motion is not a motion to dismiss for failure to state a claim under Fed.R.Bankr.P. 7012(b). Instead, it is a request to compel arbitration. If the Arbitration Motion is granted, American General argues that the complaint should be dismissed since there would be nothing left for this Court to decide. *See* Tr. at p. 3–4.

**3.** In a declaration submitted with her response to the Arbitration Motion, the Debtor claimed that she is 57 years old and suffers from diabetes, and that, as a result of the diabetes, she has vision problems which cause her to see spots and shadows, and which prevent her from reading small print.

**4.** The Debtor alleges that the first of these insurance policies was a single-premium "truncated decreasing credit life" policy with "American General Assurance Company," an insurer affiliated with American General. The coverage was "truncated" in that it only covered the Debtor's death during the first five years of the transaction and was "decreasing" in that it only covered the principal balance of the loan or such lesser amount due at the time of death. The premium was $1,629. At the time of the loan transaction, the Debtor was suffering from both diabetes and heart disease, which rendered her ineligible for the credit life insurance that American General directed her to purchase. However, according to the Debtor, American General never inquired about her health.

The Debtor also alleges that American General directed a separate payment in the amount of $400 to a different insurance com-

Though the Debtor received her heater, she eventually fell behind in her payments to American General and, ultimately, sought relief by filing a chapter 13 bankruptcy petition.

American General filed its Arbitration Motion based upon the Note executed by the Debtor in connection with the loan transaction, which included an arbitration provision (the "Arbitration Provision"). American General argues that the Arbitration Provision contains broad language requiring the Debtor to arbitrate any "covered claim." (Exhibit "A" attached to the Arbitration Motion.) "Covered claims" include "all claims and disputes arising out of, in connection with, or relating to your loan from Lender ..." (*Id.*)[5] The Arbitration Provision also states, in relevant part, as follows:

> Please go back and read the arbitration provisions carefully. They limit certain of your rights, including your right when and where to bring a Court action. By signing your loan agreement, you acknowledge that you have read and received a copy of the arbitration provisions and agree to be bound by all of the terms of the arbitration provisions and your loan agreement.

### DISCUSSION

■ The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, (the "FAA") provides, in pertinent part that:

> A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Bankruptcy courts are, nonetheless, sometimes asked to bar enforcement of an arbitration provision. The Debtor argues that this proceeding is a core matter and, therefore, the Court has discretion (and should exercise its discretion) not to enforce arbitration. Alternatively, the Debtor argues that the Arbitration Provision is unconscionable and, therefore, invalid.

1. ***This Court has discretion to decide whether to enforce an arbitration provision in an adversary proceeding involving a core matter.***

Most courts agree that, in a core proceeding, a bankruptcy court has discretion to decide whether to enforce a valid arbitration provision. *United States Lines, Inc. v. American Steamship Owners Mutual Protection and Indemnity Assoc., Inc. (In re United States Lines, Inc.)*, 197 F.3d 631, 640 (2d Cir.1999); *Ins. Co. of North America v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. (Matter of Nat'l Gypsum Co.)*, 118 F.3d 1056, 1067 (5th Cir.1997); *Larocque v. Citifinancial Mortgage Co.-Tx. (In re Larocque, II)*, 283 B.R. 640, 642 (Bankr.D.R.I.2002); *SFC New Holdings, Inc. v. The Earthgrains Co. (In re GWI, Inc.)*, 269 B.R. 114, 117 (Bankr.D.Del.2001); *In re APF Co.*, 264 B.R. 344, 362 (Bankr.D.Del.2001); *Weinstock v. Frank, Frank & Cohen (In re Weinstock)*, 1999 WL 342764, *7 (Bankr. E.D.Pa. May 25, 1999); *In re Sacred*

---

pany, "Protective Life Insurance Co.," for a single-premium term life policy that provided the Debtor with life insurance coverage in the amount of $4,000. Based on the representations of American General, the Debtor thought she had purchased only one insurance product, and what she thought she had

purchased was credit life insurance that covered her for the length of the transaction at a cost of $400.

5. At oral argument, the parties agreed that their dispute falls within the substantive terms of the Arbitration Provision. Tr. at p. 2.

*Heart Hospital of Norristown,* 181 B.R. 195, 202 (Bankr.E.D.Pa.1995). Both parties have stipulated that the instant matter is a core proceeding and that the decision whether to compel arbitration is within the Court's discretion.[6]

In exercising its discretion, the court must consider whether "any underlying purpose of the Bankruptcy Code would be adversely affected by enforcing an arbitration clause." *United States Lines,* 197 F.3d at 640 *quoting Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 885 F.2d 1149, 1161 (3d Cir.1989). *See also Weinstock,* 1999 WL 342764 at *8 ("Whether it is appropriate that core matters be heard in the forum of an arbitration proceeding requires a balancing of the provisions and policies of the two federal statutes [*i.e.,* the FAA and the Bankruptcy Code].")

In addition, other factors that bankruptcy courts have relied upon in deciding whether to enforce an arbitration provision include: (1) the degree to which the nature and extent of the litigation and evidence would make the judicial forum preferable to arbitration, (2) the extent to which special expertise is necessary to resolve the dispute, and (3) the identity of the persons comprising the arbitration panel and their track record in resolving disputes. *In re Trident Shipworks, Inc.,* 243 B.R. 130, 133

(Bankr.M.D.Fla.1999); *In re Edgerton,* 98 B.R. 392, 395 (Bankr.N.D.Ill.1989). Bankruptcy courts have also considered how the matter will impact creditors who were not parties to the agreement containing the arbitration clause. *See In re Hemphill Bus Sales, Inc.,* 259 B.R. 865, 872 (Bankr. E.D.Tex.2001).

(a) *It is appropriate to retain jurisdiction when the matter is closely tied to viability of the Debtor's chapter 13 plan and when rights of other creditors are at stake.*

The Debtor argues that this Court should decline to refer the instant matter to arbitration on the grounds that the outcome of this dispute will directly impact the viability of her chapter 13 plan and the rights of the other creditors. This adversary proceeding seeks to determine the validity, priority and extent of American General's lien. The outcome will affect the confirmability of the chapter 13 plan filed by the Debtor, which contemplates a complete restructuring of the relationship between the Debtor and American General based upon her pre-petition rescission of the mortgage. Further, the Debtor argues that if her rescission claim is successful, other unsecured creditors will benefit, because the Debtor's monthly payments will be made to the trustee and shared by

---

6. Prior to stipulating that the instant matter is a core proceeding, American General argued that there is ample authority in the Third Circuit to support the position that the court has no discretion to deny the motion and must order arbitration, unless the making of the arbitration agreement or the failure to comply therewith is at issue. *See National Iranian Oil Co. v. Mapco International, Inc.,* 983 F.2d 485, 491 (3d Cir.1992)(citing 9 U.S.C. § 4); *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985); *see also PaineWebber, Inc. v. Faragalli,* 61 F.3d 1063, 1066 (3d Cir.1995)(citing 9 U.S.C. § 4).

American General also relied on *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 885 F.2d 1149, 1161 (3d Cir.1989) in which the Third Circuit decided that bankruptcy courts should generally enforce arbitration clauses. However, courts have recognized that the *Hays* Court's holding should be limited to non-core proceedings. *See APF,* 264 B.R. at 362, quoting *In re American Freight System, Inc.,* 164 B.R. 341, 347 (D.Kan.1994)("the teachings of *Hays* are not applicable to an adversary proceeding involving a core matter.")

all unsecured creditors. Otherwise, her monthly payments would be split, so that most of the payment is made directly to American General to pay the mortgage claim, leaving only a minimal amount being paid to the trustee for unsecured creditors.[7]

Other courts have held that arbitration is inappropriate when its effect will significantly impact the debtor's plan, particularly the order of priority and amount of distribution to creditors. *See Larocque,* 283 B.R. at 642–43; *Hemphill Bus Sales,* 259 B.R. at 871–72; *APF,* 264 B.R. at 364. In such matters, the FAA's purpose of protecting the private rights of individuals to enforce arbitration agreements conflicts with some of the most fundamental purposes of the Bankruptcy Code, such as preserving the estate's assets, protecting the interests of all creditors, and restructuring the debtor-creditor relationships. *Hemphill Bus Sales,* 259 B.R. at 870 and 872; *APF,* 264 B.R. at 364. *See also In re Continental Airlines Corp.,* 64 B.R. 865, 870 (Bankr.S.D.Tex.1986)(deciding that, unlike the bankruptcy court, arbitrators would have no cognizance of the reorganization or the interests of other creditors, and that deferral to arbitration is not required).

At issue in this adversary is whether the Debtor's pre-petition rescission was valid and whether American General's claim is secured. It follows from this that the out-come of this adversary proceeding will directly affect how the Debtor's monthly payments are distributed among her creditors. Therefore, the bankruptcy court is the best forum for resolving this matter.

(b) *It is appropriate to retain jurisdiction when the neutrality or expertise of the arbitrator is in question.*

The Debtor claims that both the Arbitration Provision and the National Arbitration Forum ("NAF") unreasonably favor American General. She has expressed concern about whether NAF is a neutral forum, given that, among other things, it is a private arbitration service selected by American General, and the only allowable choice of an arbitrator under the Arbitration Provision. To that end, the Debtor has cited to decisions that have held that arbitration clauses that require arbitration by non-neutral arbitrators are invalid. *See Hooters of Am., Inc. v. Phillips,* 173 F.3d 933, 938–40 (4th Cir.1999)(The Court refused to compel arbitration when the employer's arbitration rules were determined to be biased and one-sided, especially the "scheme" which allowed the employer to control selection of the arbitration panel); *Hudson v. Chicago Teachers Union Local No. 1,* 743 F.2d 1187, 1195 (7th Cir.1984), *aff'd,* 475 U.S. 292, 307, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986)(The Court determined that the union's grievance procedure was constitutionally inadequate because, among

---

7. The Debtor also argues that, given the fragile budget on which she must rely to support herself and her family of four children, it is conceivable that the costs of an arbitration would undermine her ability to make any payments under her proposed chapter 13 plan. According to the Debtor's Memorandum, she and her family are being supported by a budget funded solely by the Debtor's social security disability and pension benefits and on an SSI check for one of the Debtor's children. *See* Schedules I and J (Ex. 1 to the Debtor's Memorandum). In response to this argument, American General has offered to bear the full costs of arbitration. The Debtor, however, argues that, as a matter of policy, this Court should refuse to consider American General's offer to bear the arbitration costs, because doing so allows it to rewrite its arbitration clause in the face of his challenge. Because all of the other relevant factors indicate that a judicial forum is preferable for this proceeding, I do not delve deeper into the issue of what should result, if anything, from American General's offer to bear the Debtor's costs of an arbitration.

other things, there was no independent arbitrator at the end of the process, since the arbitrator was paid by the union and had a financial incentive to decide cases favorably to the union.)

■ In response, American General contends that the Debtor's concerns regarding the neutrality of the arbitrator do not warrant pre-award removal of an arbitrator, citing several decisions that have held that the FAA does not permit pre-award removal of an arbitrator. *See Gulf Guaranty Life Ins. Co. v. Connecticut General Life Ins. Co.*, 304 F.3d 476, 490 (5th Cir.2002)("it is well established that prior to issuance of an [arbitral] award, a court may not make inquiry into an arbitrator's capacity to serve based on a challenge that a given arbitrator is biased"); *Aviall, Inc. v. Ryder System, Inc.*, 110 F.3d 892, 895 (2nd Cir.1997)("although the FAA provides that a court can vacate an award when there was evident partiality or corruption in the arbitrators, it does not provide for pre-award removal of an arbitrator"). However, in this case, I am not deciding whether to remove and replace a particular arbitrator, nor am I being asked to modify the terms of an arbitration clause. The Debtor's challenge goes to the overall enforceability of the Arbitration Provision; information regarding the neutrality or expertise of the chosen arbitrator are appropriate factors to consider in deciding whether arbitration is appropriate. *See Trident Shipworks, supra.*

Upon the filing of American General's motion, at the request of the Debtor, I permitted discovery directed to the issues raised in the Arbitration Motion. American General's responses to the Debtor's discovery requests consisted mostly of statements that no information was available regarding questions, such as the number of cases decided under American General's arbitration provision or the names of NAF designated arbitrators in the Philadelphia area.[8] The issues in this case involve consumer protection statutes, but there is no information on what background, if any, the arbitrators might have in this area, or about their track record in disposition of such matters. The dearth of information about the selected arbitrators provides further grounds for exercising discretion to keep this adversary proceeding in the Bankruptcy Court.

**2. *Validity of the arbitration clause.***

■ In opposing American General's arbitration, the Debtor also asserts that the Arbitration Provision in the Note is unconscionable. The issue of whether an arbitration provision is valid and enforceable should be determined by a court, rather than by the arbitrator. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967)(a claim of fraud regarding the arbitration provision should be adjudicated by the court rather than the arbitrator).

■ State law should be applied to issues concerning the validity, revocability, and enforceability of an arbitration provision, including contract defenses, such as fraud, duress, or unconscionability. *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 686–87, 116 S.Ct. 1652, 1656, 134 L.Ed.2d 902 (1996). Under Pennsylvania law, a party to a contract who seeks to resist enforcement on the grounds of unconscionability must establish: (1) one of the parties to the contract lacked a "meaningful choice" about whether to accept the provision in question, and (2) the challenged provision must unreasonably favor the other party to the contract. *See Lytle v. CitiFinancial Services, Inc.*, 810 A.2d

---

8. *See* Tr. at p. 35–38; Exhibit 7 to the Debt-    or's Memorandum.

643, 659 (Pa.Super.2002); *Zak v. Prudential Property & Casualty Insurance Co.*, 713 A.2d 681, 684 (Pa.Super.1998).

The Arbitration Provision is contained in a standard, preprinted form Note. At oral argument, American General admitted that it never deleted the Arbitration Provision from its loan documents, but indicated that it might negotiate specific terms within the arbitration provision, if asked.[9] American General also suggested that if the Debtor did not like the Arbitration Provision, nothing prevented her from walking away from the contract and obtaining a loan elsewhere.[10]

American General's position suggests that the Note is an "adhesion contract," which is defined as a "[s]tandard form contract prepared by one party, to be signed by the party in a weaker position, [usually] a consumer, who has little choice about the terms." *Lytle*, 810 A.2d at 658 *citing Huegel v. Mifflin Construction Co.*, 796 A.2d 350, 357 (Pa.Super.2002), (*quoting* Black's Law Dictionary 7th ed.1999). However, courts have looked for additional evidence, beyond a showing that the contract in question is an adhesion contract, to support a finding that a party lacked any meaningful choice about the contract's provisions. *Seedor v. American Dynasty Surplus Lines Ins. Co. (In re Elcom Technologies Corp.)*, 2000 WL 1470217, at *6 (E.D.Pa.2000). *See also Bishop v. Washington*, 331 Pa.Super. 387, 400–401, 480 A.2d 1088, 1094–95 (1984).

Further, to determine whether the Arbitration Provision is unconscionable, a court must analyze whether it is unreasonably favorable to the drafting party. *Bishop*, 331 Pa.Super. at 400, 480 A.2d at 1094–95. The Arbitration Provision in the Note specifically excludes from arbitration American General's right to enforce its remedies with respect to the property securing the loan transaction. In *Lytle*, the Superior Court of Pennsylvania held that, under Pennsylvania law, an arbitration clause that reserves the lender's access to the courts, while at the same time restricting the consumer's claims or controversies to arbitration, creates a "presumption of unconscionability, which, in the absence of 'business realities' that *compel* inclusion of

---

9. Tr. at p. 27. At oral argument, counsel for American General could not identify any particular term(s) of the Arbitration Provision which American General would be willing to alter if ever asked to do so by a prospective borrower. *Id. See also* Exhibit 7 to the Debtor's Memorandum, p. 5.

10. However, a decision by the Debtor to "walk away" would necessarily require that she actually had read the Arbitration Provision. The Debtor argues that her disability prevented her from being able to see the text of the document that she was being asked to sign and that she then relied upon the American General employee to review the relevant portions of the agreement with her. According to the Debtor, the American General employee omitted any reference to the Arbitration Provision.

As a general matter, a lender is not responsible for instances in which a party to an agreement disavows knowledge of certain terms of that agreement. Numerous Pennsylvania courts have consistently held that contracting parties are bound to their contracts regardless of whether they read or understood them. *See Simeone v. Simeone*, 525 Pa. 392, 400, 581 A.2d 162, 165 (1990); *Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 305, 469 A.2d 563, 566 (1983)(failure to read a contract does not warrant nullifying its provisions). American General contends that, under *Smith v. Creative Resources, Inc.*, 1998 WL 808605, 1998 U.S. Dist. LEXIS 18545 (E.D.Pa.1998), a literate adult may not avoid a contractual obligation on the ground that he or she did not read or understand the terms of the contract. The Debtor did, indeed, sign the Note in this case. Without additional evidence, I cannot determine whether her alleged disability or other condition or circumstance would except her from the general rule.

such a provision in an arbitration provision, renders the arbitration provision unconscionable and unenforceable under Pennsylvania law." *Lytle,* 810 A.2d at 665 (emphasis in original).[11] While the provision appears to favor unreasonably its drafter, there was no evidentiary hearing at which American General had an opportunity to demonstrate whether any "business realities" exist to justify the use of the one-sided provision in a consumer loan transaction. *Id.*

Without an evidentiary hearing, I cannot conclude that the Arbitration Provision is unconscionable. However, an evidentiary hearing on the Arbitration Motion is not necessary in light of my conclusion that the Arbitration Provision should not be enforced.

## CONCLUSION

The Debtor's claims should be heard in the Bankruptcy Court, because this proceeding will directly affect the terms of the chapter 13 plan proposed by the Debtor, which, in turn, directly impacts the amount available for payment of unsecured creditors. Further, a judicial forum is preferable, since this matter involves Truth–in–Lending Act issues and insufficient information has been made available about the chosen arbitrators, including information about their experience, expertise or neutrality. For these reasons, I will deny American General's motion to compel arbitration.

---

11. The *Lytle* Court recognized that its holding—which shifted the burden of proof back to the party seeking to enforce arbitration and found lack of mutuality presumptively unconscionable—was contrary to other holdings. *See Lytle,* 810 A.2d at 665 n. 13 (collecting cases). In particular, in *Harris v. Green Tree Financial Corp.,* 183 F.3d 173 (3d Cir.1999), the Third Circuit Court of Appeals rejected arguments that an arbitration agreement should be voided under the doctrine of mutuality and as unconscionable because the agreement gave the lender the option to litigate arbitrable issues in court, while limiting the borrowers to arbitration. The *Harris* Court noted that Pennsylvania Courts had not specifically addressed the issue, but predicted that Pennsylvania Courts would likewise reject both arguments because "Pennsylvania law, consistent with the most recent restatement of contracts, does not otherwise require both parties to an agreement to have equivalent obligations to satisfy the standard of mutuality of obligation. ... As long as the requirement of consideration is met, mutuality of obligation is present even if one party is more obligated than the other." *Harris,* 183

F.3d at 181 (citations omitted). *See also id.,* at 183–84.

However, the Supreme Court of the United States has said:

Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.

*West v. American Telephone & Telegraph Co.,* 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139 (1940). *See also Carrasquilla v. Mazda Motor Corp.,* 197 F.Supp.2d 169, 173 (M.D.Pa. 2002)("[A] district court is bound by its court of appeals on questions of state law *unless* 'later state court decisions indicate that the Court of Appeals' earlier prediction of state law was in error.' " (emphasis added) *citing Stepanuk v. State Farm Mutual Automobile Ins. Co.,* 1995 WL 553010, at *2 (E.D.Pa. September 19, 1995)). For this reason, I will follow Pennsylvania's rule of law concerning unconscionability as newly established by *Lytle.*