**In re William C.B. BROWN and Mary V. Brown, Debtors.**

**William C.B. Brown and Mary V. Brown, William C. Miller, Chapter 13 Trustee, Plaintiffs,**

v.

**Ocwen Federal Bank, Wells Fargo Bank Minnesota, N.A., Delta Funding Corporation, Brookside Mortgage, First Choice Builders, Inc., Defendants.**

**Bankruptcy No. 03–32154DWS. Adversary No. 03–1284.**

United States Bankruptcy Court, E.D. Pennsylvania.

June 9, 2004.

Maria C. Palladino, MacElhenny and Pallidino, Philadelphia, PA, for Debtors.

David A. Scholl, Law Office of David A. Scholl, Newtown Square, PA, for Plaintiffs.

Louis W. Schack, Reed, Smith, Shaw & McClay, LLP, Robert A. Nicholas, Emily Barnhart, Martin C. Bryce, Jr., Philadelphia, PA, Joshua Z. Goldblum, Feasterville, PA, for Defendants.

### MEMORANDUM OPINION

DIANE WEISS SIGMUND, Chief Judge.

Before the Court is the Motion of defendant Delta Funding Corp. ("Delta") to Stay Further Proceedings and to Compel Arbitration (the "Motion"). The debtors and plaintiffs William and Mary Brown ("Debtors") brought an action (the "Adversary") against Delta, Ocwen Federal Bank, Wells Fargo Bank ("Wells Fargo"), Brookside Mortgage ("Brookside") and First Choice Builders, Inc. ("Choice") alleging violation of various federal and state consumer protection statutes. The Motion seeks to shift the venue of the action only against Delta from this Court to an arbitration proceeding pursuant to a prepetition arbitration agreement entered into by the Debtors and Delta when the credit extension was made by Delta. A hearing was held at which the parties presented argument which was then supplemented by post-hearing briefs.[1] For the following reasons, the Motion is granted.

---

**1.** In their Memorandum of Law in Opposition to the Motion, Debtors appear to contend that

## BACKGROUND

The following facts are gleaned from the pleadings and found for the purpose of resolving this Motion. The Debtors borrowed funds from Delta to finance certain home improvements which were to have been performed by Choice. Brookside was the mortgage broker. At some point, the mortgage loan was acquired by Wells Fargo, and Ocwen appears to be the servicer of the loan.

When the loan was made by Delta to Debtors, among the papers they signed was a document captioned "Arbitration Agreement." It provides in relevant part as follows:

> Upon your or our delivery of a written notice demanding arbitration to the other party... any Claim shall be resolved by binding arbitration pursuant to this Agreement and the applicable rules of either the American Arbitration Association, JAMS or the National Arbitration Forum ("NAF") in effect at the time of the written notice demanding arbitration. You may select which if these arbitrators to use....

Declaration of David Forman, Exhibit "Arbitration Agreement." Claim is defined as "any claim, dispute or controversy between the parties," and claims under the Truth-in-Lending Act and the Home Owners Equity Protection Act which are asserted in the Complaint are specifically referenced. The Agreement also states that it is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, as it relates to a transaction involving interstate commerce within the meaning of the FAA. There is no question that the Adversary is a Claim under the Agreement and the FAA is applicable.

On December 11, 2003 the Complaint initiating the Adversary was filed. Answers were due on January 12, 2004. Wells Fargo filed its answer on February 5, 2004, and Ocwen did so the next day.[2] Delta filed the Motion on February 11, 2004 seeking a stay of proceedings during its pendency. Choice filed its answer on February 18, 2004.

## DISCUSSION

■ If a party to a binding arbitration agreement is sued in federal court on a claim that the party has agreed to arbitrate, the defendant is generally entitled under the Federal Arbitration Act to an order compelling arbitration and a stay (or dismissal, as appropriate) of the court proceeding pending arbitration. *Seus v. John Nuveen & Co., Inc.*, 146 F.3d 175, 178 (3d Cir.1998) (*citing* 9 U.S.C. §§ 3, 4). Debtors dispute Delta's entitlement to arbitration, contending that (1) the demand to arbitrate has been waived; (2) the Agreement is not enforceable because it was not entered knowingly, voluntarily and intelligently; (3) the Agreement is not enforceable as it is unconscionable and (4) the Agreement is not enforceable because the Adversary is a core proceeding in a bankruptcy case which should be tried in the

---

an evidentiary hearing is required to elicit facts relating to the execution of the Agreement in order for this Court to properly assess its enforceability. However, other than the Declaration of the Debtors in Opposition to the Motion which was attached to their Memorandum, no evidence was presented at the scheduled hearing. While there is also some reference in the Memorandum to the need for discovery and a deferral of the disposition of the Motion pending that activity, the issue was never raised with the Court and to my knowledge, Debtors did not seek to engage in any discovery.

2. Ocwen and Wells Fargo filed a stipulation with Debtors for an extension of the answer deadline. As it was not filed in PDF format, it was stricken from the record so I do not know what their agreement was.

bankruptcy court. I will consider each of these arguments in turn.

### A. *Waiver*

In their brief Debtors acknowledge agreements to extend the answer time provided to Ocwen, Wells Fargo and Choice. They appear to also acknowledge a similar agreement to allow Delta an extension of the time to answer. Plaintiff's Memorandum of Law in Opposition to Motion at 2. As best as I can surmise, Debtors' waiver argument arises because Delta filed a motion to stay the proceeding pending its request to compel arbitration rather than an answer on the merits. Given that Delta filed a formal response consistent with the date Debtors' counsel had apparently agreed to for its answer and consistent with the date the other parties responded, I am hard pressed to understand the basis of the waiver argument. If Debtors' extension agreement was so limited, they should have filed a stipulation with the Court or at least put the agreement in writing. As Debtors have provided no legal basis for finding a waiver, I will reject the contention with no further discussion.

### B. *Existence of Agreement*

Debtors assert, and I agree, that my threshold inquiry is whether there is an actual agreement to arbitrate. *Seus v. John Nuveen*, 146 F.3d at 178 (usual practice in arbitration cases is to ask whether there is a binding agreement to arbitrate and if so, whether the dispute is within the scope of that agreement[3]). The Debtors argue that there was no agreement to arbitrate because the Agreement was not entered into voluntarily, knowingly and intelligently. In support of this position, Debtors have submitted their affidavit stating that they are elderly and ill, the settlement clerk did not explain the papers they signed, they do not know what an "arbitration Agreement" is and they signed the Agreement only because it was in the pack of papers they were told to execute. Declarations of Debtors in Opposition to Motion. Assuming for the purposes of this Motion these facts to be true, they do not establish Debtors' cause.

In *Seus v. John Nuveen, supra,* the plaintiff made a similar claim to the one made by Debtors herein. The Third Circuit summarizes and then rejects her argument as follows:

> By "knowing" and "voluntary," Seus means more than with an understanding that a binding agreement is being entered and without fraud or duress. Determining whether an agreement to arbitrate is "knowing" and "voluntary," in her view, requires an inquiry into such matters as the specificity of the language of the agreement, the plaintiff's education and experience, plaintiff's opportunity for deliberation and negotiation, and whether plaintiff was encouraged to consult counsel. She does not contend that this heightened "knowing and voluntary" standard is a generally applicable principle of contract law.... Applying that standard here would be inconsistent with the FAA and *Gilmer [v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) ]. *Nothing short of a showing of fraud, duress, mistake or some other ground recognized by the law applicable to contracts generally would have excused the district court from enforcing Seus's agreement.*

*Id.* at 183–84 (emphasis added). Notably Debtors do not contend any false repre-

---

**3.** The second criterion is not disputed by the Debtor. The Adversary claims are within the scope of the Agreement.

sentation or the withholding of truth when it should have been disclosed. *Compare Bender v. Smith Barney, Harris Upham & Co., Inc.,* 789 F.Supp. 155, 158 (D.N.J. 1992). Rather the thrust of their position is that Debtors signed the Agreement without any understanding of it since it was not explained to them and they are elderly and ill.

A number of courts have addressed whether Debtors' averred circumstances present grounds to excuse performance of an agreement to arbitrate, and consistently have found they do not. They reason that in order for an omission to constitute grounds to ignore a contract, a plaintiff must first prove that the defendant had a duty to disclose the fact at issue. As stated by the Court in *Cohen v. Wedbush, Noble, Cooke, Inc.,* 841 F.2d 282, 287 (9th Cir.1988) *overruled on other grounds, Ticknor v. Choice Hotels Int'l Inc.,* 265 F.3d 931, 941–42 (9th Cir.2001):

> We know of no case holding that parties dealing at arm's length have a duty to explain to each other the terms of a written contract. We decline to impose such an obligation where the language of the contract clearly and explicitly provides for arbitration of disputes arising out of the contractual relationship. This is not a criminal case; the Cohens' argument that there was no "showing of intelligent and knowing waiver of the substantive rights at issue," . . . is simply beside the point.

*Id.* at 287. The Court went on to opine that it saw no unfairness in expecting parties to read contracts before they sign them and to do otherwise would undermine the integrity of contracts generally and the efficacy of arbitration clauses in particular, by frustrating the very policies these clauses, and the Arbitration Act itself, are meant to promote. *Id.* at 287–88. *Accord Hill v. Gateway 2000, Inc.,* 105 F.3d 1147, 1148 (7th Cir.1997); *Federowicz v. Snap–On Tools Corp.,* 1992 WL 55723, at *3 (E.D.Pa. March 12, 1992). In *Sydnor v. Conseco Financial Servicing Corp.,* 252 F.3d 302 (4th Cir.2001), the Fourth Circuit Court of Appeals reversed the trial court's refusal to enforce an arbitration clause in a financing contract to make a home improvement loan finding that plaintiffs did not knowingly and voluntarily waive their right to a jury.[4] The Court reasoned:

> [a]n elementary principle of contract law is that a party signing a written contract has a duty "to inform himself of its contents before executing it . . . and in the absence of fraud or overreaching he will not be allowed to impeach the effect of the instrument by showing that he was ignorant of its contents or failed to read it"

*Id.* at 306 (*quoting Corbett v. Bonney,* 202 Va. 933, 121 S.E.2d 476 (1961)). *See also Rogers v. Brown,* 986 F.Supp. 354, 359 (M.D.La.1997) (no case law or statutory authority for imposing duty to explain an arbitration clause in an employment contract); *McCarthy v. Providential Corp.,* 1994 WL 387852, at *5 (N.D.Cal. July 19, 1994) (no duty to explain consequences of arbitration clause to senior citizens entering into reverse mortgage loans).[5]

Debtors' case authority does not refute these consistent rulings. In *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co.,* 636 F.2d 51 (3d Cir.1980), the Court held that

---

4. Actually the perceived burden of arbitration on the Debtors here is less as they do not seek a jury trial.

5. Notably these last two cases arise in the consumer context and belie the Debtors' contention that the principles espoused by Delta arise in connection with arbitration of securities cases and are not applicable here.

a court should not enforce an arbitration clause that is not found to be an express, unequivocal agreement of the parties. In that case, the plaintiff had indicated that it never had intended to enter into the contract for the supply of goods when an unauthorized employee signed a form provided by the seller. Unlike the facts here, it was not merely the arbitration clause that was at issue but the contract that was allegedly invalid for lack of authorization. *Ferreri v. First Options of Chicago, Inc.*, 623 F.Supp. 427 (E.D.Pa.1985), also deals with a question of whether the party that signed the agreement to arbitrate had the authority to bind his partner, the defendant. *Sandvik AB v. Advent International Corp.*, 220 F.3d 99 (3d Cir.2000), merely stands for the unremarkable proposition that before compelling arbitration, a court must decide whether a valid binding agreement to arbitrate exists. In this case, the party resisting arbitration also claimed that the agent that signed the agreement on its behalf lacked authority to do so. Finally *China Minmetals Materials Import and Export Co., Ltd. v. Chi Mei Corp.*, 334 F.3d 274 (3d Cir.2003),[6] applied that basic principle to arbitrations conducted under the Convention on the Recognition and Enforcement of Foreign Arbitration Awards, reasoning that arbitration being a matter of contract, no arbitration may be compelled without an agreement to arbitrate.[7] I agree with the general principle enunciated in these cases as I noted when I began this discussion

but find that they do not support Debtors' contention that their agreement to arbitrate should not be enforced because they simply did not know what they were agreeing to. Rather I find that the Debtors signed the Agreement entering into a contract for arbitration, the enforcement of which will depend on whether there are any contract defenses such as duress, illegality, fraud or unconscionability that will excuse their performance. *Choice v. Option One Mortgage Corp.*, 2003 WL 22097455, at *5 (E.D.Pa. May 13, 2003) (*citing Harris v. Green Tree Financial Corp.*, 183 F.3d 173, 179 (3d Cir.1999)) (*citing Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996); *Lytle v. CitiFinancial Services, Inc.*, 810 A.2d 643, 656 (Pa.Super.2002).

C. *Unconscionability and Mutuality*

Debtors argue that the Agreement should not be enforced because they had no choice but to accept it if they wanted the loan and because its provisions are unfair in so far as certain types of claims held by Delta are not subject to arbitration (*e.g.*, foreclosure proceedings) whereas all claims by Debtors are. Debtors bring to the Court's attention *Lytle v. CitiFinancial Services, Inc., supra*, which they contend reflects the emerging Pennsylvania jurisprudence which requires a critical examination of attempts by lenders to foreclose the courts to consumers. Plaintiffs' Memorandum of Law in Opposition to Motion at 3.

---

**6.** Debtors point out that Judge Tucker relied on this case, among others, in an Order entered in *DiToranto v. Household Finance Consumer Discount Co.*, C.A. No. 03–5951 (E.D.Pa. Feb. 24, 2004). As the unpublished Order was not attached as represented, I am unable to address the applicability of *DiToranto*.

**7.** The significance of the decision is the Court's conclusion that the international con-

text of the arbitration did not affect the principle that the district court should decide whether there was a valid agreement to arbitrate. In this case, the arbitration had occurred and the successful party was attempting to enforce the foreign arbitration award. However, the defendant contended that the underlying contract, including the arbitration agreement, was a forgery.

First, I would note that there is no evidence that the Arbitration Agreement was an essential component of the loan extension. Indeed the Debtors claim they were unaware of the Agreement which would negate any effort on their part to secure the loan without this provision. In any event, even if the agreement to arbitrate was a condition of the loan, it does not render it unenforceable. These arguments were made and rejected in *Dabney v. Option One Mortgage Corp.*, 2001 WL 410543 (E.D.Pa. April 19, 2001). There the plaintiff argues that the arbitration agreement was an adhesion contract whose essential terms are unconscionable thereby rendering it unenforceable.[8] Unconscionability has been described as an absence of meaningful choice on the part of one party together with contract terms which are unreasonably favorable to the other party.[9] *Federowicz v. Snap–On Tools Corp.*, 1992 WL 55723, at *3 (E.D.Pa. March 12, 1992). In *Dabney*, the plaintiff argued that she had no meaningful choice in signing the arbitration agreement with the lender because she had already executed the repair contract. Like here, the court found no evidence that plaintiff had attempted to negotiate the challenged provision or that she could not have secured other financing. However-

er, even if she could establish such lack of meaningful choice, the terms of the agreement did not unreasonably favor the defendant.

Federal courts have found that arbitration agreements do not in and of themselves favor one party over the other. *McCarthy*, 1994 WL 387852, at *7. There is no basis to conclude, and Debtors have not contended, that they will be denied a full and fair consideration of their claims in arbitration under the rules of the American Arbitration Association, JAMS or National Arbitration Forum. They are not being deprived the opportunity of a jury trial as they have requested a bench trial in bankruptcy court. Thus, it is hard to understand how the Agreement can have an oppressive character so as to be found unconscionable.

While I recognize that the Superior Court has stated that arbitration agreements in consumer contracts are presumptively unconscionable by reserving access to the courts for the merchant to the exclusion of the consumer, I believe the Debtors overstate the case when they contend that *Lytle v. CitiFinancial Services, Inc., supra*, represents a decisional trend on this issue.[10] In any event, I find that I

---

**8.** While Debtors do not use these terms, this is the only legal theory that fits their argument. In *Harris v. Green Tree Financial Corp.*, 183 F.3d 173 (3d Cir.1999), the Third Circuit differentiated between procedural and substantive unconscionability. The former relates to the form that the agreement takes, *i.e.*, inconspicuous or unclear contractual language. Procedural unconscionability does not appear to be claimed here. The latter relates to the terms the agreement imposes. *Id.* at 182–83. The mutuality argument raised here was also raised in *Harris* and as the Court there noted, it overlaps with the claim of substantive unconscionability.

**9.** A finding that a contract is one of adhesion does not require a finding that the contract is

unconscionable. Rather the terms of the contract must be analyzed to determine whether the contract as a whole, or specific provisions of it, are unconscionable. *Lytle*, 810 A.2d at 658.

**10.** In *Lytle*, the Court found that the arbitration clause was presumptively unconscionable because of the ability reserved for the lender to access the court for certain remedies whereas the borrower was consigned to arbitration of its claims. The Court noted that in the absence of "business realities" that would compel the use of arbitration, the provision would be unenforceable. As Citifinancial had not had an opportunity to justify the business reasons for the provision, the Court remanded to the trial court for further proceedings.

am bound by the Third Circuit's contrary decision in *Harris v. Green Tree Financial Corp.*, 183 F.3d 173 (3d Cir.1999), which rejected the homeowners' contention that the arbitration clause in their mortgage agreement was invalid because it lacked the requisite mutuality and was unconscionable. Noting that the arbitration clause fell within the scope of the FAA, the Court recognized that the statute "was enacted to 'revers[e] centuries of judicial hostility to arbitration agreements' by plac[ing] arbitration agreements upon the same footing as other contracts." *Id.* at 178 (*quoting Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 225–26, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987)). Accordingly, it reasoned that "federal law presumptively favors the enforcement of arbitration agreements." *Id.* That presumption was not undermined by principles of unconscionability or lack of mutuality arising from the lender's right to litigate arbitrable issues in court, while the homeowners could only invoke arbitration. The Circuit Court did not find the terms of the arbitration clause so unreasonably favorable to the lender to make the agreement unconscionable. Moreover, citing its decision in *Becker Autoradio USA, Inc. v. Becker Autoradiowerk GmbH*, 585 F.2d 39 (3d Cir.1978), it reaffirmed that mutuality is not a requirement of a valid arbitration clause, a conclusion reached by most other federal circuits to have considered the issue. *Id.* at 180 (citing cases). *See also Dabney v. Option One Mortgage Corp.*, 2001 WL 410543, at *5 (E.D.Pa. April 19, 2001) (the fact that the agreement allowed the defendant to retain rights to litigate while denying them to the plaintiff of no legal consequence).

Notably the *Harris* decision predates *Lytle*.[11] However, the same argument against enforcement of an arbitration agreement was made in a subsequent Third Circuit decision, *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002), and the Court affirmed its holding in *Harris* that a contract need not have mutuality of obligation as long as the contract is supported by consideration. Absent an intervening Pennsylvania Supreme Court decision enunciating the law of Pennsylvania differently than it was interpreted by the Third Circuit Court of Appeals, I am bound to follow the Third Circuit's ruling. *See Largoza v. General Electric Co.*, 538 F.Supp. 1164, 1166 (E.D.Pa.1982); *Doane v. Travelers Insurance Company*, 266 F.Supp. 504, 505 (E.D.Pa.1966).

The same conclusion was reached by the District Court in *Choice v. Option One Mortgage Corp.*, 2003 WL 22097455 (E.D.Pa. May 13, 2003) where the homeowner brought similar federal and consumer claims against various entities and individuals involved in a mortgage transaction to finance home repairs. Rejecting the application of *Lytle* on the grounds that the arbitration agreement Choice entered did not provide her with the same access to the courts as it did the mortgage company, the Court concluded that it could not predict that the Pennsylvania Supreme Court would follow *Lytle* rather than *Harris*, and it was bound by *Harris* until the Pennsylvania Supreme Court held otherwise.[12] As there has been *no ruling* by the

11. The Circuit Court had relied on the restatement of contracts as applied in Pennsylvania which does not require both parties to an agreement to have equivalent obligations to satisfy the standard of mutuality, noting that Pennsylvania courts appeared not to have considered whether mutuality is required in arbitration agreements.

12. The Court also noted that the provision in the arbitration agreement that the Pennsylvania court relied upon heavily to conclude that the agreement was so one-sided as to be un-

Pennsylvania Supreme Court contrary to *Harris,* I respectfully decline to follow *Lytle* as well.

### D. *Arbitration and Bankruptcy Proceeding*

 Debtors' final argument is that "relegating the Proceeding, a core proceeding the outcome of which is critical to the success of the Debtors' Chapter 13 bankruptcy case, is [ ] precluded by the decision of the District Court affirming the bankruptcy court decision that it is not appropriate to arbitrate such matters in *In re Mintze,* 2003 WL 22701020 (E.D.Pa. Nov. 12, 2003), *aff'g* 288 B.R. 95 (Bankr. E.D.Pa.2003)." Memorandum of Law in Opposition to Motion at 2–3. *Mintze* enunciates the general understanding that, *in a core proceeding,* a bankruptcy court has discretion to decide whether to enforce an arbitration clause. *Mintze,* 288 B.R. at 97. While the Third Circuit in *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 885 F.2d 1149, 1161 (3d Cir.1989), held that bankruptcy courts should generally enforce arbitration clauses, that case involved a non-core proceeding and its application has been so limited. *Mintze,* 288 B.R. at 97 n. 6.

In *Mintze,* both parties had stipulated that the matter at issue was a core proceeding, and the decision whether to compel arbitration was within the bankruptcy court's discretion. *Id.* at 97. As there has been no such agreement here, the threshold issue is whether the Adversary is a core proceeding as Debtors contend or non-core as urged by Delta. Only if Debtors' position is sustained is *Mintze* applicable.

 In support of their argument, Debtors paint a broad brush, relying on their claims against the co-defendant Wells Fargo, their current mortgagee which has filed a proof of claim in this bankruptcy case, to demonstrate the core nature of the Adversary. I agree that the Debtors' claims against Well Fargo are core, and if Wells Fargo were seeking enforcement of an arbitration clause, I would have discretion to deny the demand. However, Debtors make no case for their claims against Delta being core to this bankruptcy case.[13] Delta has not filed a proof of claim, and thus the bankruptcy claims process is not implicated here. All of the claims against Delta arise under non-bankruptcy law and are properly viewed as related to the bankruptcy case but not core. Thus, the driving considerations in *Mintze* are absent here: the claims are not closely tied to the viability of the Debtors' plan and the rights of other creditors are not affected if I examine solely the claims against Delta.

conscionable was the $15,000 cut-off for arbitration, a provision that was not replicated in the Option One agreement or for that matter in that of Delta.

**13.** Debtors' statement that "[t]he determination of the Proceeding is important to the success of the Debtor's [*sic*] Chapter 13 Plan" is supported by reference to the existence of claims to determine the validity of *Wells Fargo's* secured claim and counterclaims for damages that will offset its proof of claim. Plaintiffs' Mem. at 3–4. Indeed Debtors do not even discuss their claims against Delta in this context. Nor can they. Delta, having sold the mortgage loan, is not a creditor. As

such, resolution of the claims against Delta are not implicated by Debtors' Chapter 13 plan, and Debtors' argument that the claims process would be impaired by enforcing arbitration is fundamentally flawed. Rather the claim against Delta is an asset of the Debtors which, I note, is not listed on Debtors' Schedule of Assets, and the proceeds of which are not dedicated to be distributed to creditors. Fed.R.Evid. 201 (court may take judicial notice of schedules). Thus, it would appear that the Debtors' joinder of their claims against Delta in this Adversary is the only nexus to this bankruptcy case.

712

It is not controverted that an adversary proceeding may present a combination of core and non-core claims and that a core claim joined with non-core claims does not change the character of the latter. *Halper v. Halper*, 164 F.3d 830, 838–39 (3d Cir.1999) (adopting claim-by-claim approach and rejecting view that an adversary proceeding could be characterized as core if core claims predominate). Moreover, where less than all the claims are arbitrable, as would be the case with the core claims against Wells Fargo, "the court may proceed with the non-arbitrable claims, but the court is obliged to honor the arbitration clause agreed to by the parties and to lay aside the arbitrable claims." *Pierson v. Dean, Witter, Reynolds, Inc.*, 742 F.2d 334, 338 (7th Cir.1984). While dual proceedings may not be the most efficient and economical manner of resolving the Debtors' claims against all the defendants, the United States Supreme Court has expressly stated that this factor is not grounds to refuse to enforce an otherwise valid arbitration agreement. *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985) (the FAA, through its plain meaning and the strong federal policy it reflects, requires courts to enforce the bargain of the parties to arbitrate, and not substitute its own views of economy and efficiency for those of Congress). If this principle is inappropriate when the plaintiff is undergoing reorganization in bankruptcy, as Debtors contend, they have supplied me with no evidence or legal authority to depart from the general rule for that reason.

Finally, I do not accept the Debtors' premise that arbitration of the claims against Delta requires suspension of the remaining claims against Wells Fargo and the other defendants with a concomitant adverse impact on the pending Chapter 13

case. The other defendants have filed their answers to the Complaint four months ago, and I am prepared to now enter a pretrial order that will set procedures and deadlines for trial of the remaining claims.

An Order consistent with this Memorandum Opinion shall issue.

### ORDER

**AND NOW,** this 9th day of June 2004, upon consideration of the Motion of defendant Delta Funding Corp. ("Delta") to Stay Further Proceedings and to Compel Arbitration (the "Motion"), after notice and hearing, and for the reasons stated in the accompanying Memorandum Opinion;

It is hereby **ORDERED** that the Motion is **GRANTED.** Plaintiffs' claim against Delta are stayed pending arbitration.